John H. MARCHANT

v.

AMERICAN AIRLINES, Inc.

Civ. A. 1553.

United States District Court
D. Rhode Island.

Oct. 17, 1956.

Joseph V. Cavanagh, Providence, R. I., for plaintiff.

William S. Flynn, Christopher J. Brennan, Providence, R. I., for defendant.

DAY, District Judge.

In this action a jury has returned a verdict for the plaintiff in the sum of $24,500 for injuries alleged to have been sustained by him while a passenger on one of the defendant's airplanes. The defendant has moved for judgment notwithstanding the jury's verdict, or in the alternative, for a new trial.

This motion asserts that it should be granted for thirty-seven alleged reasons or grounds, the last of which is that of newly discovered evidence. Many of the alleged reasons or grounds are substantially the same, although phrased somewhat differently. Summarized, they may be said to fall into the following categories, viz.: (1) The verdict is contrary to the law, (2) The verdict is contrary to the evidence, (3) The verdict is contrary to the law and the evidence, (4) The verdict is excessive and was the result of passion, prejudice and sympathy, (5) The Court erred in refusing to grant certain instructions requested by the defendant and to correct or modify certain instructions which were given to the jury, (6) The Court committed error in certain of its rulings with respect to the admission and exclusion of evidence during the trial and in refusing to direct a verdict in its favor, (7) Plaintiff's counsel made improper argument to the jury, and (8) Newly discovered evidence which the defendant in the exercise of due diligence could not have produced during the trial.

The evidence established that while a passenger for hire in one of defendant's airplanes enroute from Los Angeles to New York city plaintiff suffered a ruptured eardrum and damage to his inner ear which resulted in some loss of hearing and tinnitus. Plaintiff claimed this rupture and resulting damage was due to a traumatic inflammation of his middle ear caused by pressure differences between his middle ear cavity and the surrounding atmosphere in the cabin of the airplane in which he was riding. He contended that the defendant was negligent in permitting these pressure differences to arise and to continue to exist after notice that he was suffering from the effects of such pressure differences and further, in failing to give him such reasonable attention, consistent with its duty to the other passengers then on said airplane, to protect him from injury after his condition was made known to the defendant.

Plaintiff presented competent medical testimony to the effect that his injury

was the result of traumatic inflammation of his middle ear caused by pressure differences between his middle ear cavity and the surrounding atmosphere. He also testified that although he called the attention of the stewardess to his condition on two occasions, prior to the rupture of his eardrum, she took no action to alleviate his condition. Although the pressurizing equipment in the cabin was automatically operated, it is clear also that it was subject to manual control by the pilot of the plane who could raise or lower it or keep it constant by the controls at his disposal. There was also testimony that the stewardess was supplied by the defendant with inhalators for use by passengers suffering from air pressure differences as was the plaintiff. According to the testimony these devices were effective to reduce and eliminate such differences and there was competent medical testimony to the effect that if this difference in pressure was eliminated, immediate relief would have been given to the plaintiff and there would have been no rupture of his eardrum.

There was a sharp conflict between the testimony of the plaintiff and the stewardess. She denied that he had made any complaint to her prior to the rupture of his eardrum and claimed that she first learned of his condition afterwards. She testified that she made and filed a report of plaintiff's injury with her superiors shortly after the incident. This report was not produced at the trial and no satisfactory explanation of its non-production was given. However, it is undisputed that she gave no care or attention to the plaintiff until after his eardrum ruptured. It is also undisputed that the defendant did not at any time take any action to eliminate the differences in the pressure between the plaintiff's middle ear cavity and the surrounding atmosphere prior to the rupture of plaintiff's eardrum, and that the defendant's airplane continued to rise to greater altitudes and was still climbing at the time of said rupture.

The defendant on the other hand presented testimony to the effect that plaintiff's eardrum as not ruptured by a traumatic inflammation but rather was ruptured due to some unknown infection or inflammation which prevented the Eustachian tubes of his ear from functioning properly. It produced testimony from medical experts to the effect that as a result of this unknown infection or inflammation said tubes would fail to make the normal adjustments to differences in air pressure which they, if free from infection or inflammation, would make in order to compensate for differences in pressures due to changes in altitude. The testimony, in short, was replete with conflicts as to the situation existing prior to and at the time plaintiff was injured and as to the cause of his injury.

The rule is well established that a motion for a judgment notwithstanding the verdict presents only a question of law whether when all the evidence is considered together with all reasonable inferences to be drawn therefrom most favorable to the plaintiff there is a total failure or lack of evidence to prove the necessary element of the plaintiff's case. In passing upon such a motion it is not my province to weigh the evidence. Viewing the evidence and all the reasonable inferences to be drawn therefrom in a light most favorable to the plaintiff, I cannot say there was a complete absence of probative facts to support the verdict of the jury.

The defendant's motion for judgment notwithstanding the verdict is denied.

The defendant has moved, in the alternative, for a new trial. The rule to be followed in reviewing the verdict of a jury is clearly set forth in Tennat v. Peoria & Pekin Union Ry. Co., 321 U.S. 29 at page 35, 64 S.Ct. 409, at page 412, 88 L.Ed. 520 where the Supreme Court held:

"The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibili-

ty of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. Washington & Georgetown R. Co. v. McDade, 135 U.S. 554, 571, 572, 10 S.Ct. 1044, 1049, 34 L.Ed. 235; Tiller v. Atlantic Coast Line R. Co., supra, 318 U. S. [54] 68, 63 S.Ct. [444] 451, 143 A.L.R. 967; Bailey v. Central Vermont Ry., 319 U.S. 350, 353, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444. That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."

And in Peterman v. Indian Motorcycle Co., 1 Cir., 216 F.2d 289, at page 292, the rule is stated to be the following:

"Under our jury system, reasonably disputable issues of fact are to be resolved by the jury, and if a case is properly submitted to the jury's determination, the losing party is not entitled as a matter of right to have a second chance upon a new trial before a different jury, even though the evidence submitted would have warranted the opposite verdict, and even though the trial judge, had he been sitting without a jury, might have found the facts the other way."

Having in mind the broad guiding principles enunciated in the above cases, I do not feel that I would be warranted in setting aside the jury's verdict on the grounds that the verdict was contrary to the law, or to the evidence, or to both the law and the evidence. In fact, I believe it would be an invasion of the province of the jury if I were to do so. In my opinion there is ample evidence in the far as the negligence of the defendant record to support the jury's verdict inso-

and the proximate cause of the plaintiff's injury are concerned.

The defendant also contends that the verdict was excessive and was the result of passion, prejudice and sympathy and should therefore be set aside. The verdict of a jury should not be set aside on the ground that it is excessive unless it is so grossly excessive as to shock the court's sense of justice and the impropriety of allowing it to stand is manifest. In the absence of a showing that a verdict of the jury is the result of passion, prejudice or sympathy, where there is substantial evidence in the record to support the award, it would be an unwarranted interference by me with the constitutional right to trial by jury for me to substitute my judgment for that of the jury. Werthan Bag Corp. v. Agnew, 6 Cir., 202 F.2d 119, 122; Jones v. Atlantic Refining Co., D.C.E.D.Pa., 55 F.Supp. 17, 19; Malone v. Suburban Transit Co., D.C.S.C., 64 F.Supp. 859, 865; Thomas v. Conemaugh Black Lick Railroad, D.C.W.D.Pa., 133 F.Supp. 533, 547.

On April 9, 1951, the plaintiff was fifty-one years of age. He was a college professor and chairman of the division of engineering at Brown University in Providence, Rhode Island. He testified unequivocally that he was not suffering from any cold or other disorder when he boarded defendant's airplane and that he had never experienced any trouble with his ears although he had made many flights prior to April 9, 1951. Subsequent to the rupture of his eardrum he testified that he had suffered pain and discomfort for a short time, some loss of hearing and a consistent hissing sound in his right ear. This he said was present at all times during his waking hours and aroused him regularly from his sleep at least every other night and still existed at the time of the trial.

His attending physician, a well recognized expert in his specialized field, testified that the plaintiff was still suffering at the time of the trial from damage to his inner ear cells accompanied by tinnitus, the medical term used to de-

scribe the hissing sound in the plaintiff's ear. He testified that the tinnitus cannot be terminated; that the chances are "pretty great" that it will grow worse, and that when it gets to the point where it is so annoying that the patient is continually disturbed "we usually get rid of him and send him to a psychiatrist to see if he can make the patient adjust himself to the difficulty." In addition, there was credible testimony that the plaintiff had suffered pain and discomfort for a short time after April 9, 1951. On all the evidence the jury was clearly warranted in finding that the plaintiff had suffered an injury which would cause him annoyance and discomfort as long as he lived. I know of no yardstick or unit of measurement by which I can fairly and honestly say that the verdict of the jury is so excessive as to shock my conscience. Although reasonable men might possibly consider it liberal, I am not convinced that the jury's verdict was prompted by passion, prejudice or sympathy. On the contrary, I believe there was substantial evidence to support the award. In my opinion it would be an unwarranted usurpation by me of the province of the jury if I were to disturb the verdict of the jury on the ground that it was excessive.

The sixth ground for the defendant's motion for a new trial is that I erred in refusing to grant certain instructions requested by the defendant and to correct or modify certain instructions which I gave the jury. Defendant submitted seventeen requests to charge. As the record will show, I gave certain of the requested instructions in the language requested by the defendant. The others I granted insofar as they were included in my general charge. I am of the opinion that the instructions as given by me to the jury adequately covered the issues to be decided by it.

Defendant also contends that its motion for a new trial should be granted because, as it claims, I erred in certain rulings admitting or excluding evidence and denying its motion for a directed verdict. In my opinion these rulings were correct and the defendant's contentions in this respect are without merit.

As ground (7) of its motion the defendant contends that counsel for the plaintiff made improper argument to the jury. The record will show that defendant's counsel did make certain objections to the argument of plaintiff's counsel, not all of which were valid or well taken. In the instances which I deemed the argument improper I admonished the jury that they were to be concerned only with the evidence and the reasonable inferences to be drawn therefrom. In my general charge I instructed the jury that the arguments of counsel were not evidence, and that they were not controlled or bound by the interpretations of the evidence made by counsel or by their versions of the testimony. I further instructed them that passion, prejudice or sympathy were not to influence their judgment in any way. While the argument of counsel for the plaintiff was at times vigorous, I do not consider it to have been improper and, considering all the evidence in this case, I find no reason for concluding that the jury disregarded my careful instructions as to the consideration or weight to be given to the arguments of counsel for each of the parties.

Lastly, the defendant urges that its motion for a new trial should be granted upon the ground of newly discovered evidence which it says it could not produce in the exercise of due diligence during the trial. The affidavits filed in support of this ground of defendant's motion are to the effect that the plaintiff was involved in an automobile accident on November 24, 1954; that as a result thereof he sustained an injury to his neck with resultant pain in his neck and a progressive numbness of his thumb and forefinger. There is no contention in these affidavits that the plaintiff claimed that any damage to his ear resulted from the accident of November 24, 1954. During the trial plaintiff was not interrogated as to whether he had been involved in any accident which occurred either before or subsequent to April 9, 1951. Had he been interrogated as to the happening of any such accident in which he had been involved and had he answered in the negative, which seems

unlikely in view of his candor on the witness stand, the alleged newly discovered evidence would have been admissible to attack his credibility. However, in the federal courts newly discovered evidence which serves merely to affect the credibility of other evidence does not constitute a proper basis for a new trial. The newly discovered evidence must be such and of such a nature that it will probably change the result if a new trial is granted. Kansas City Southern Railway Company v. Cagle, 10 Cir., 229 F.2d 12; Davis v. Yellow Cab Company of St. Petersburg, Inc., 5 Cir., 220 F.2d 790; Grant County Deposit Bank v. Greene, 6 Cir., 200 F.2d 835. I am not satisfied that the alleged newly discovered evidence, relating as it does to an injury of a nature and extent entirely different from that for which plaintiff seeks recovery here, is such as to warrant my setting aside the jury's verdict and granting a new trial. I do not believe it is such or of such a nature as will probably change the result if a new trial were granted. This being so, it is not sufficient ground for a new trial.

The defendant's motion, in the alternative, for a new trial is denied.