**Marian J. WILSON, Administratrix of the Estate of Robert E. Wilson,**

v.

**NU-CAR CARRIERS, Inc.**

**Civ. A. No. 5402.**

United States District Court
M. D. Pennsylvania.
Jan. 6, 1958.

128

Henderson & Terrizzi, Huntingdon, Pa., Markowitz, Liverant, Rauhauser & Kagen, York, Pa., for plaintiff.

Metzger, Wickersham & Knauss, Harrisburg, Pa., for defendant.

FOLLMER, District Judge.

This matter is presently before the Court on motions of the defendant for judgment in accordance with motion for directed verdict and for new trial following verdict of the jury in favor of plaintiff.

The case involved the death of Robert E. Wilson following an automobile accident about 3:30 o'clock P.M. on September 30, 1954. The accident occurred in Oliver Township, Mifflin County, Pennsylvania, just east of McVeytown on United States Highway Route 22, leading in an easterly direction from McVeytown to Lewistown. Robert E. Wilson, the decedent, was driving a bread truck in an easterly direction. His vehicle was struck on the left rear by a tractor-trailer designed for transporting automobiles and operated by Walter Hess, driver-employee of defendant, Nu-Car Carriers, Inc., and also traveling in an easterly direction.

As to the motion for directed verdict, the facts stated most favorably to plaintiff's case, drawing all reasonably possible inferences going to support the verdict, are as follows:

Hess, the driver of the tractor-trailer, from 7:00 o'clock A.M. September 29, 1954 to 3:30 o'clock P.M. September 30, 1954, a total of thirty-two and one-half hours, had been continuously driving or working at work incidental to his duties as a driver, with the exception of two

rest periods aggregating eight hours. According to his own testimony, the weather was clear; he was traveling eastwardly on Route 22 and for a distance of five hundred feet leading up to the point of the accident he had observed no traffic at all although defendant's own witnesses, Robert B. Nichols and Agnes Runk, both testified that they were driving respectively a bus and an automobile in the opposite direction and both passed the defendant's tractor-trailer shortly before the accident; that there was clear visibility for a distance of five hundred feet to the point of the accident; that he was looking at the mountains and thinking about the days of the Indians, and enjoying the countryside; that when he looked back the bread truck was in front of him about thirty feet distant; that his only excuse for his failure to observe passing traffic was "I didn't pay any attention"; that the bread truck was headed in the same direction as the tractor-trailer; that he could only see the rear wheels of the bread truck and that the right wheel[1] might have been a foot or two off the concrete highway on the macadam berm; that when less than thirty feet from the bread truck, Hess jammed on his brakes, swung to the left and his right front struck the left rear of the bread truck; that the tractor-trailer was traveling at a speed of thirty-five to forty miles per hour.

There was conflicting testimony involving the course taken by the bread truck, i. e., whether as claimed by the plaintiff to have been proceeding eastwardly on Route 22 or to have entered Route 22 from Water Street, which entered Route 22 diagonally from the southwest, as contended by defendant. It was my feeling at the conclusion of the testimony that the plaintiff was entitled to have the issue of liability submitted to the jury. A careful reading of the testimony confirms my original conclusion.

The function of the court in this matter is clearly stated in Vol. 6 Moore's Federal Practice 3814, § 59.08(5):

"* * * In ruling on the motion for directed verdict, or for judgment n. o. v., it is the duty of the trial court to take that view of the evidence most favorable to the party against whom the motion is made, and from that evidence, and the inferences reasonably and justifiably to be drawn therefrom, determine whether or not, under the law, a verdict might be found for him. The trial court, then, in considering the motion for directed verdict, determines whether the evidence is legally sufficient to take the case to the jury; similarly, in considering the motion for judgment n. o. v. whether the evidence is legally sufficient to support the verdict that the jury has returned against the movant * * *."

Defendant's motion for directed verdict will accordingly be denied.

In considering the motion for a new trial a different test must be applied. A motion for a new trial is addressed to the sound discretion of the court. De Pascale v. Pennsylvania R. Co., 3 Cir., 1950, 180 F.2d 825, 826; Nuttall v. Reading Company, 3 Cir., 1956, 235 F.2d 546. In the exercise of that discretion, the Court may consider the evidence as a whole and weigh it, and if he thinks the jury was mistaken or that the verdict is wrong, although supported by some evidence, he should grant a new trial. Grayson v. Deal, D. C.N.D.Ala., 85 F.Supp. 431.

"The authorities generally recognize that a new trial should not be granted where it is obvious that it would serve no purpose except to relitigate issues

---

1. The testimony shows that later on during the Hess examination this question and answer appears:
"Q. Well, all you know is that the truck was on the highway and was just a foot or two with its right side on the berm headed in the same direction you were, isn't that correct? A. That's right."

which have been correctly and finally determined. In considering a motion for a new trial the court must determine whether or not the reasons advanced indicate that a substantial injustice has been done by improper action on the part of the court or jury, and also indicates that a new trial will amount to more than a mere relitigation of the issues. Furthermore, in considering the present motion the court must view the evidence and all the inferences which may reasonably be drawn therefrom in the light most favorable to the plaintiff, against whom the motion is directed. * * *." Miller v. Pacific Mutual Life Ins. Co., D.C.W.D.Mich.1954, 17 F.R.D. 121, 124.

In 10 Cyclopedia of Federal Procedure, 3d Ed., § 34.04, at page 69, it is stated:

"Courts are reluctant to grant new trials or rehearings and will not do so unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done."

Rule 61 of the Federal Rules of Civil Procedure, 28 U.S.C. provides:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

The reasons assigned by defendant for a new trial, which will be considered in the light of the above quoted Rule, may be briefly stated as follows: Nos. 1 to 4 inc., verdict is contrary to the law and the evidence; No. 5, Court erred in permitting Walter Hess, driver of defendant's truck, to be called as a hostile witness; No. 6, Court erred in admitting testimony of Mrs. Wray; No. 7, Court erred in admitting testimony relative to Interstate Commerce regulations; No. 8, Court erred in permitting cross-examination of Robert B. Nichols by use of notes of testimony taken at coroner's inquest; No. 9, Court erred in relation to testimony of Sara A. Mort and Andrew J. Royko, and various rulings on points; No. 10, exceptions to charge, and No. 11, verdict excessive.

Walter Hess was the driver of the truck owned by defendant and the sole eyewitness to the accident.

■ Rule 43 of the Federal Rules of Civil Procedure provides, in part, as follows:

"(a) Form and Admissibility. In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner.

"(b) Scope of Examination and Cross-Examination. A party may interrogate any unwilling or hostile witness by leading questions. A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach

him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief."

It is true Walter Hess was not "an officer, director or managing agent" of defendant corporation.

In Eckenrode v. Pennsylvania R. Co., 3 Cir., 1947, 164 F.2d 996, the court did not quarrel with the discretion exercised by the trial judge in permitting the defendant's train crew to be examined as hostile witnesses. Up to that point, at least, the case would seem to be a perfect parallel with the instant case. It would appear, however, that no objection to the procedure was there interposed by the defendant railroad.

Nor am I unmindful of the position taken by some courts that the rule should be followed literally, that is, an employee should not be called and examined as an adverse witness unless he is an "officer, director or managing agent" of the corporation. Peterson Construction Co. v. Lafayette County, Wis., D.C.W.D.Wis., (1939) 2 Fed.Rules Serv. 43b.2, Case 1; Dowell, Inc. v. Jowers, 5 Cir., 1950, 182 F.2d 576, 581. In the latter case the court said: "It was error to permit plaintiff to call Wenk (an engineer) on cross-examination but this error was harmless and did not affect the substantial rights of the parties."

In Wright v. Wilson, 3 Cir., 1946, 154 F.2d 616, 617, 170 A.L.R. 1237, certiorari denied 1946, 329 U.S. 743, 67 S.Ct. 50, 91 L.Ed 640, Judge Goodrich thus evaluates paragraph (a) of Rule 43:

"Our starting point now is Rule 43(a) of the Rules of Civil Procedure. It is there provided that all evidence comes in if admissible under United States statutes, or under theretofore existing rules of United States equity courts or state law, whichever favors the reception of the evidence. It has been correctly pointed out that this is a rule of admissibility not exclusion. The evidence comes in under whichever one of the tests of admissibility is most favorable."

The Union Pacific Railroad Company v. Ward, 10 Cir., 1956, 230 F.2d 287, involved a crossing accident between defendant's train and plaintiff's tractor and tank trailer which had stalled on tracks. Court held it was not error to permit trucker to examine engineer as hostile witness and to permit leading questions.

United States v. Uarte, 9 Cir., 1949, 175 F.2d 110, was a suit under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq. and involved a three-car collision. Plaintiff's car traveling in a southerly direction was followed by government owned car driven by two Navy employees. A heavy truck to which was attached a semi-trailer and a trailer was proceeding in a northerly direction on the same highway. The Navy car clipped plaintiff's car in the rear, throwing it into a skid when it collided with the truck. The two occupants of the government car were killed. Plaintiff received a fractured skull and brain concussion resulting in a complete amnesia as to the facts of the accident. No other witness saw the accident except McCoy, the driver of the truck, and his wife who was riding with him. Court held that trial court did not err in permitting plaintiff to call and examine truck driver as adverse witness on presumption that such driver, who was his employer's co-defendant in plaintiff's previous state court action arising from same incident and had been dismissed as defendant in instant action, would be unwilling witness.

The pertinent Pennsylvania Statute (1887, May 23, P.L. 158, § 7, 1911, March 30, P.L. 35, § 1, 28 Pa.P.S. § 381) reads as follows:

"In any civil proceeding, whether or not it be brought or defended by a person representing the interests of a deceased or lunatic assignor of any thing or contract in ac-

tion, a party to the record, or a person for whose immediate benefit such proceeding is prosecuted or defended, or any director or other officer of a corporation or joint stock or other association which is a party to the record, or for the immediate benefit of which such proceeding is prosecuted or defended, or any other person whose interest is adverse to the party calling him as a witness, may be compelled by the adverse party to testify as if under cross-examination, subject to the rules of evidence applicable to witnesses under cross-examination, and the adverse party calling such witnesses shall not be concluded by his testimony, but such person so cross-examined shall become thereby a fully competent witness for the other party as to all relevant matters whether or not these matters were touched upon in his cross-examination, and also, where one of the several plaintiffs or defendants, or the person for whose immediate benefit such proceeding is prosecuted or defended, or such director or officer, or such other person having an adverse interest, is cross-examined under this section, his co-plaintiffs or co-defendants, or fellow directors or officers, shall thereby become fully competent witnesses on their own behalf, or on behalf of the corporation or association of which they shall be directors or officers, as to all relevant matters, whether or not these matters were touched upon in such cross-examination."

As to what constitutes "adverse interest" within the meaning and intent of this Act, the Supreme Court of Pennsylvania in Dinger v. Friedman, 1924, 279 Pa. 8, at page 14, 123 A. 641, at page 643, had this to say:

"*  *  * it was the duty of the court to determine, as a matter of fact, whether the substantial interest of the witness would be most promoted by the success or failure of the party calling him *  *  *, and if, after considering the issue involved and the actual effect of the result of the trial on the material interests of the person called, it appeared that the witness would gain most by the success of the party calling him, he cannot be classed as adverse, within the meaning of the act.

"It is 'adverse interest and not adverse testimony that disqualifies a witness,' where such an interest is made a statutory bar *  *  *; and similarly, where the fact that a witness has an adverse interest entitles one to call him for cross-examination, it is that adverse interest, and not his adverse testimony, which is to be considered."

Henry's Pennsylvania Evidence, Vol. 2, § 764, page 193, thus analyzes the problem:

"The adverse interest of a person called on cross-examination must be involved in the question being tried and must be such as would be promoted by the success of the adversary of the party calling him and on which the judgment in the case would have an operative effect. If it appears the interest of the witness would be promoted more by the success of the party calling him than by that of the other party, the adverse interest contemplated by the statute is lacking. Where objection is made to the right to call a witness on cross-examination, it is the duty of the court to determine, from the facts presented, whether the substantive interest of the witness would be most promoted by the success or the failure of the party calling him and if it appears he would gain most by the success of the party calling him, he cannot be classed as adverse within the meaning of the act."

■ In the instant case, Hess, the driver, was a potential defendant, certainly he had nothing to gain by the success of the plaintiff. He would there-

fore, appear to be adverse. However, as stated by the court in Dowell, Inc. v. Jowers, supra, the testimony of Hess as given on cross-examination by plaintiff as an adverse witness was harmless and did not affect the substantial rights of the parties. Hess was subsequently called by defendant as its own witness and corroborated in substantial part the testimony he had previously given under cross-examination.

I find no merit in this objection.

■ Defendant objects to the admission of testimony of Tillie Wray. The testimony of this witness was to the effect that she lived on Canal Street, McVeytown; that Canal Street ran parallel to Route 22; that her home was located approximately 50 feet from· Route 22; that she was working on her lawn and saw the bread truck go by on Route 22 in an eastwardly direction. This testimony was followed by testimony of Banks Vaughn, partner in Home-Test Baking Co., employer of decedent driver and the owner of the bread truck involved in the accident, that there was no other bread truck in this vicinity at the time of the accident. There was also before the jury the testimony of Hazel Rothrock, a passenger in the bus traveling on Route 22 in a westerly direction, that approximately midway between Water Street and Furnace Road, an over-all distance of 538 feet, she passed and recognized decedent on Route 22, in the bread truck, going in the opposite direction. This testimony was clearly relevant and was a matter for jury determination.

On cross-examination of Sara A. Mort, plaintiff asked the witness if her husband drove a tractor-trailer himself. The answer was "Yes." I see nothing wrong with that.

■ Robert B. Nichols was called as a witness by the defendant. He was the driver of the bus traveling in a westerly direction on Route 22 and passed Water Street just prior to the collision. On cross-examination he was asked if he had testified at the coroner's inquest following the accident and answered that he had. Counsel for plaintiff then proceeded to cross-examine him from a stenographic report of the coroner's hearing. It developed that there was no official reporter present and that both plaintiff and defendant had stenographers present who reported the hearing. Defendant strenuously objected to the use by plaintiff's counsel of the report made by his stenographer. Defendant apparently had his stenographer's report and could, had he so desired, have used it to correct or contradict plaintiff's report. He either refused or failed so to do and cannot now be heard to complain of plaintiff's use of his report when there is nothing on the record to indicate it was in any degree in error.

■ Plaintiff read in the record, over defendant's objection, this interrogatory and answer:

"Question one: 'Furnish copy of driver's log of Walter H. Hess as driver for Nu-Car Carriers, Inc., for the days beginning at 6:00 p. m., September 28, 1954, until September 30, 1954, at 3:30 p. m.'

"Answer: 'This log was destroyed subsequent to September 30, 1955, since the Interstate Commerce Commission regulations require its retention for a period of one year only.'"

This testimony was, in my opinion, of the highest relevancy. In view of the fact that Paul W. May, Director of Safety and Personnel of defendant company, was called by defendant and on interrogation by defendant's counsel testified at length on the pertinent I.C.C. regulations, covering necessity of filing and keeping drivers' logs for one year, hours drivers are permitted to work, rest periods, etc., defendant's objection is completely without merit.

■ Defendant charges that plaintiff had two theories as to how the accident occurred and that they involved separate and distinct rules of the road. This is a tempest in a teapot.

In the first place, Rule 8(e) (2) of the Federal Rules of Civil Procedure provides, inter alia:

"A party may set forth two or more statements of a claim or defense alternately or hypothetically, \* \* \*. A party may also state as many separate claims or defenses as he has regardless of consistency \* \* \*."

The complaint charges as follows:

"VIII. That on the 30th day of September, 1954 at or about 3:30 P. M., the Plaintiff's decedent, Robert E. Wilson, was lawfully driving a 1948 GMC truck owned by the Home Test Baking Company of Huntingdon, Pennsylvania, on Route 22 in Oliver Township, Mifflin County, Pennsylvania, when a truck owned by the Defendant, Nu-Car Carriers, Inc. and being operated by Walter H. Hess, an agent, servant or employee of the Defendant, Nu-Car Carriers, Inc., who was then and there acting within the scope of his employment, negligently struck the truck being operated by Plaintiff's decedent, all to the damage and injury of Plaintiff's decedent, as hereinafter set forth and entirely due to the negligence of the Defendant, as hereinafter specified."

In strict conformity with that allegation, plaintiff proceeded on the theory that the bread truck was proceeding eastwardly on Route 22. Hess, the driver of defendant's tractor-trailer, put the bread truck on Route 22 facing eastwardly with the exception of "a foot or two" which was on the berm on the southern side of the road.

Defendant attempted to show that the bread truck entered Route 22 from Water Street. Plaintiff did not proceed on alternate theories but did meet the counter theory set up by defendant. At no time did Hess testify to having seen the bread truck on Water Street or coming out of Water Street. Paul E. Laird, a witness called in behalf of defendant, testified that he was a passenger on the westbound bus; that he looked to the left into Water Street; that he "thought" he saw a bread truck; again, he was "sure" he saw a bread truck; finally, he "thought" the bread truck was moving. The fact remains there was ample evidence to the effect that the bread truck was completely on Route 22 in a position perpendicular to the road. If the testimony of the driver of the defendant's tractor-trailer is to be believed, namely, that a foot or two of the right side of the bread truck was on the berm on the southern side of the road, it would be entirely consistent with the idea that decedent was pulling off the main highway to stop at his own home a short distance to the east, the direction in which he was heading.

As a further reason for new trial, defendant feels that the charge was inadequate and therefore prejudicial to defendant. It also charges error in the admission or rejection of various points submitted by both parties.

Rule 51 of the Federal Rules of Civil Procedure reads as follows:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

In the instant case, at the conclusion of evidence, the Court met in chambers with counsel for plaintiff and counsel for defendant and there and in their presence considered seriatim first the points submitted by plaintiff and then the

points submitted by defendant and indicated the rulings that would be made thereon. The record indicates some argument on the points but no objection on the part of the defendant. As a matter of fact, after plaintiff had indicated his objection to some of defendant's points, counsel for defendant said: "I have nothing to offer." At the conclusion of the charge counsel for defendant said: "I want to except to the refusal of all the Defendant's points and the affirmation of all the Plaintiff's points, and then I will ask for a general exception to the charge."

■■■ The record indicates a complete failure on the part of the defendant to comply with the specific injunction of the Rule to state "distinctly the matter to which he objects and the grounds of his objection." In discussing this Rule the Supreme Court in Palmer v. Hoffman, 318 U.S. 109, at page 119, 63 S.Ct. 477, at page 483, 87 L.Ed. 645, said: "In fairness to the trial court and to the parties, objections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error. Where a party might have obtained the correct charge by specifically calling the attention of the trial court to the error and where part of the charge was correct, he may not through a general exception obtain a new trial." See also,

Biggans v. Hajoca Corp., 3 Cir., 1950, 185 F.2d 982.

■■■ Finally, defendant complains that the verdict of $93,655.38 is excessive. The decedent was 27 years of age at the time of the accident with a life expectancy of 40.36 years. He had been employed by the bread company as a driver a little over a year and his gross earnings for the year were about $3,000. He was well thought of by his employer and had expected earnings from $4,500 to $5,000 per year, being salary paid by the employer to salesmen of experience. Decedent left a widow 25 years of age and four children aged respectively at time of accident 8, 6, 4, and 1 year.

I am not only not shocked at the amount of the verdict, nor, under all of the facts and circumstances of the case, do I consider it excessive. A careful reading of the transcript of the trial and thorough consideration of briefs submitted leaves me with the definite conclusion that the verdict as rendered should stand. The trial was fair. The charge, together with rulings on points submitted, in my opinion, correctly, fairly and adequately informed the jury on the applicable law.

Defendant's motion for new trial will be denied.