Theodore **TARTER**, Administrator of the Estate of Elmer John Hoffman, Deceased

v.

**SOUDERTON MOTOR CO.**, Inc., and George K, Maginniss, t/a Maginniss Foreign Car Sales.

**Civ. A. No. 29472.**

United States District Court
E. D. Pennsylvania.

Aug. 29, 1966.

Leonard Barkan, Philadelphia, Pa., Wm. H. Eastburn, III, Doylestown, Pa., for plaintiff.

Krusen, Evans & Byrne, Thomas E. Byrne, Jr., Philadelphia, Pa., for George K. Maginniss.

## OPINION

KRAFT, District Judge.

On the morning of May 31, 1960, shortly after 8:30 a. m., the decedent, Elmer John Hoffman, was operating his Gogomobile automobile on Edgehill Road, Abington Township, Pennsylvania, when the left rear wheel separated from the vehicle, causing it to veer from its course and strike a pole. The decedent was unconscious from the moment of the impact until he died, later that same day, from the consequent injuries.

The plaintiff-administrator sued the dealer, Souderton Motor Company, Inc. (Souderton), which sold the car to the decedent, and George K. Maginniss t/a Maginniss Foreign Car Sales (Maginniss), who serviced the vehicle shortly before the accident. Plaintiff claimed Souderton was negligent in selling to the decedent a vehicle which plaintiff alleged was defective and unsafe in design and manufacture. Plaintiff also claimed that Souderton breached its seller's warranty that the vehicle "was safe and fit in every respect."

The claim against Maginniss was predicated upon his alleged failure to affix the left rear wheel to the brake drum properly to prevent its separation from the car.

The jury found in favor of the plaintiff against Maginniss only [1] and awarded $70,000 in the action for wrongful death and $10,000 in the action under the survival statute.

Maginniss asks judgment notwithstanding the verdict or, in the alternative, a new trial.[2] He attacks the ver-

[1]. The jury in answer to special interrogatories found that Souderton did not breach its warranty and was not negligent.

[2]. The instant motions were docketed by the Clerk of the District Court on December 4, 1964, but for reasons unknown to the Court were not listed for argument until June 21, 1966.

dicts as grossly excessive. He contends, too, that, since the plaintiff sought to establish negligence by circumstantial evidence, plaintiff failed to negate other equally permissible inferences; such as, (1) that the alleged unsafe design of the Gogomobile caused the accident, or (2) that someone other than Maginniss removed and replaced the left rear wheel during the six-day interval between the time the car last left the Maginniss garage and the day of the accident.

■ The law of Pennsylvania governing proof of negligence by circumstantial evidence was reexamined in Smith v. Bell Telephone Co. of Pa., 397 Pa. 134, 139, 153 A.2d 477, 480 (1959), in which the Court stated:

"Therefore, when a party who has the burden of proof relies upon circumstantial evidence and inferences reasonably deducible therefrom, such evidence, in order to prevail, must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion as to outweigh in the mind of the fact-finder any other evidence and reasonable inferences therefrom which are inconsistent therewith."

■ It is also the law of Pennsylvania that, "[A] plaintiff is entitled to have his case considered by the jury even though he does not show that the only reasonable inference is that defendant's negligence was the proximate cause of the accident. It is enough that he produces evidence which may properly be found by the jury to justify an inference that the defendant's negligence was the proximate cause of the accident because such evidence outweighs even though it does not *exclude* an inference that the defendant was not negligent or that his negligence was not the proximate cause of the accident." Lear v. Shirk's Motor Express Corp., 397 Pa. 144, 152, 152 A.2d 883, 887 (1959) (emphasis in original); Yeager v. J. R. Christ Co., Inc., et al., 364 F.2d 96 (3 Cir. 1966).

■ A plaintiff is not required to prove his claim with "mathematical exactness", Cuthbert v. City of Philadelphia, 417 Pa. 610, 614, 209 A.2d 261 (1965), but the "[e]vidence sufficient to warrant recovery must describe, picture or visualize what actually happened sufficiently to enable the fact-finding tribunal reasonably to conclude that the defendant was guilty of negligence and that his negligence was the proximate cause of the accident." Lescznski v. Pittsburgh Rwys. Co., 409 Pa. 102, 106, 185 A.2d 538, 539 (1962).

■ The evidence in this action was sufficient to permit the jury to conclude, reasonably:

(1) that from early spring until the date of the accident, May 31, 1960, only Maginniss' employes repaired or serviced the decedent's car; (2) on May 24, one week before the accident, the decedent's son visited the Maginniss garage and saw the left rear wheel off the Gogomobile; (3) the car was next seen in the defendant's driveway about 4:30 p. m. on Wednesday, May 25; (4) during the interim, from May 24 until the happening of the accident on May 31, the Gogomobile was operated only by decedent, who used the car once on Saturday, May 28, to drive to his place of employment in Doylestown and to return home later the same day; (5) that the left rear wheel separated from the decedent's car because it was not mounted or affixed to the brake drum in a *rigidly tight* [3] manner.

The cause of the separation of the wheel was established through the plaintiff's expert testimony, corroborated substantially by the opinions of both defendants' experts. The plaintiff's expert witness, Balke, testified that, even if only one of the bolts or screws was not pulled up *rigidly tight*, the wheel would have loosened and separated itself from the car within a distance of one to three hundred miles in the course of use of the vehicle.

---

3. As distinguished from "snug" which means the screws could be "inched a little bit more."

From the whole of the evidence we think the jury could have reasonably deduced that Maginniss' employes were the last persons to remove and replace the wheel; that they did so in a negligent manner and that that was the proximate cause of this accident.

Maginniss', attacking the jury's determination, argues that the evidence raised additional equally permissible inferences indicating that the accident resulted from other causes. He points to: (1) the expert tesimony offered by the plaintiff regarding the alleged faulty design of the wheel on the Gogomobile; (2) the fact that the wheel surface contained paint splatters, indicating that the wheel had been off a number of times before the last service visit to Maginniss' garage; (3) the fact that the car had been in the control of the decedent for six days preceding the accident; (4) the fact that the car had been parked on a public parking lot at a shopping center; (5) the use of the car for an unexplained distance of approximately 35 miles during the six-day period preceding the accident. He urges that all of these factors, either singly or in combination, give rise to the permissible inference, that Maginniss' employes were not the last persons to have placed a wrench on the wheel.

The jury, as the fact finder, was entitled, we think, under all the evidence, to accept, without resorting to speculation, those inferences it deemed reasonable and to reject those which it regarded as unreasonable. It is no longer the law that the plaintiff must establish "circumstances * * * so strong as to preclude the possibility of injury in any other way and provide as the only reasonable inference the conclusion plaintiff advances." That proposition was expressly overruled in Smith v. Bell Telephone Co. of Pa., supra, 397 Pa. p. 137, 153 A.2d p. 479.

The evidence pertaining to the alleged faulty design of the wheel was offered by the plaintiff in support of his negligence and breach of warranty claims against *Souderton*. The jury rejected this evidence and found in favor of Souderton against the plaintiff. That the plaintiff offered evidence in this regard against a co-defendant does not mean that he was foreclosed from attempting to prove a different theory of causation and liability against Maginniss. If such were the rule a plaintiff would be put to a Hobson's choice [4] of pursuing one theory of liability exclusively, when he actually had different bases for his claim against the two defendants.

It does not appear unreasonable that the jury rejected the evidence of faulty design, in light of the fact that the car had already been driven in excess of 10,000 miles without any wheel mishap. Moreover, there was expert testimony that, in spite of any alleged design deficiencies, if the wheel had been rigidly tight, it would not have parted from the brake drum.

The fact that the wheel had been removed from the decedent's car on prior occasions and contained splatters of aluminum paint [5] scarcely compels an inference that Maginniss' employes were not the last persons to remove and replace the wheel; particularly, since the wheel was removed and replaced by Maginniss on May 16, 1960. Moreover, there was no evidence that any persons, other than Maginniss' employes removed the wheel during the period from the early spring of 1960 until the date of the accident. It is sheer conjecture to infer that, while the decedent parked his car briefly in a public shopping center in Doylestown,

4. An expression which means no choice at all. It is derived from the practices of an eccentric English innkeeper and carrier, Thomas Hobson (1544–1631) who possessed a stable of 40 horses, but always compelled a traveler to "choose" the horse nearest the stable door. Thus he was able to exercise all of his horses. See the Spectator No. 509, Oct. 14, 1712.

5. The testimony regarding the aluminum paint was offered in conjunction with the plaintiff's evidence regarding the rusting or deterioration of the wheel and related to the alleged faulty design of the wheel.

someone *may* have loosened or removed and replaced the left rear wheel.

We do not consider it substantially significant that the plaintiff was unable to account for approximately 35 miles of use of the car during the six-day period preceding the accident. As we stated earlier, the law does not oblige the plaintiff to prove his case with "mathematical accuracy". The unexplained mileage, alone or in combination with the other evidence focused upon by the defendant, does not warrant our setting aside the jury's verdict.

■ Maginniss also assails the jury's verdict as grossly excessive. The decedent was 50 years, 10 months old at the time of his death. He was in good health and possessed habits of frugality.[6] As a clothing salesman he earned a salary ranging between $85 and $95 weekly. He was married and had one son, aged 14, at the time of the accident. The jury would have been justified in finding that he had a life expectancy of 26 years.

The decedent's employer Ward & Ward, Inc., which had just opened a branch store in Doylestown, regarded the decedent as a good salesman, who was conscientious and trustworthy. The evidence, if credited, indicated that, as a clothing salesman, he had an earning potential of $9000, with a prospect of becoming the store manager at an annual salary of $10,000.

We cannot fairly say the verdicts are grossly excessive in view of the decedent's health, frugality, life expectancy, earning capacity, which included prospects for substantial advancement. Arnold v. Loose, 352 F.2d 959, 964 (3 Cir. 1965); Wilson v. Nu-Car Carriers, Inc., 158 F.Supp. 127, 135 (M.D.Pa.1958); Johns, Admr. v. Baltimore & Ohio Railroad Company, 143 F.Supp. 15, 27, 28 (W.D.Pa.1956) aff'd per curiam 239 F.2d 385 (3 Cir. 1957).

■ We must reject the defendant's contention that "in testing a jury's award for excessiveness" we must consider the effect that income tax consequences would have exerted on any sum the decedent would have accumulated or contributed to the support of his family. Pennsylvania law precludes the *jury* from giving any effect to possible income tax consequences in determining damages. Girard Trust Corn Exchange Bank v. Philadelphia Transp. Co., 410 Pa. 530, 538, 190 A.2d 293 (1963).

■ Finally, the defendant contends that a new trial is necessitated because the Court overruled his objections to the qualifications of the plaintiff's expert witness, C. C. Balke, a metallurgist. We have carefully reviewed the record in this regard and perceive no error. While we permitted the witness to testify, we took adequate care to instruct the jury upon its prerogative to accord to his testimony whatever weight it felt it deserved. No specific prejudice is charged by the defendant, nor do we find any. The qualifications of defendants' experts were not greatly dissimilar from the plaintiff's expert, nor did they disagree with his opinion that the wheel came off the brake drum because it had not been *rigidly tight*.

Finding no merit in the defendant's motions, we enter the following:

### ORDER

Now, this 29th day of August, 1966, it is ordered that the motions of the defendant, Maginniss, for judgment notwithstanding the verdict or, in the alternative, for a new trial be, and they are, denied.

---

6. His widow testified that the decedent turned over to her his entire pay, and she allotted him six or seven dollars weekly for his lunches. She also testified that he spent $200 per year on his clothing expenses.