Marion DOMERACKI

v.

HUMBLE OIL & REFINING CO.

Civ. A. No. 37907.

United States District Court,
E. D. Pennsylvania.

Feb. 26, 1970.

Marvin I. Barish, Philadelphia, Pa., for Marion Domeracki.

James F. Young, Krusen, Evans & Byrne, Philadelphia, Pa., for Humble Oil & Refining Co.

## OPINION

LUONGO, District Judge.

Marion Domeracki, a longshoreman, was seriously injured while loading stores aboard the defendant's vessel, the SS ESSO LIMA. In this action, Domeracki contended that his injuries were caused by the unseaworthiness of the vessel and the defendant's negligence in failing to maintain a reasonably safe place to work. The court submitted eight interrogatories to the jury for its consideration. Pursuant to the jury's answers thereto,[1] I directed a verdict for

1. The following are the interrogatories submitted to the jury, and the answers thereto:

"1. Did defendant shipowner breach the absolute duty to furnish a safe and seaworthy vessel

 (a) by furnishing defective equipment?

 Yes <u>X</u> No ___

 (b) by failing to furnish adequate equipment?

 Yes <u>X</u> No ___

 (c) by permitting an improper method of operation in the loading of stores?

 Yes <u>X</u> No ___

"2. If you have answered YES to any of the parts of Interrogatory No. 1,

the plaintiff and entered judgment accordingly on May 22, 1969.

Presently before me are defendant's motions under Rule 50, F.R.Civ.P., for judgment notwithstanding the verdict, or, in the alternative, for a new trial. In support of these motions, defendant has set forth the following grounds: (1) the verdict was contrary to the evidence and against the weight of the evidence; (2) the verdict was excessive and given under the influence of passion and prejudice; (3) the jury should have been withdrawn when plaintiff's counsel improperly referred to a separate indemnity action between defendant and plaintiff's employer; (4) defendant's request for certain points for charge should have been granted; (5) instructions to the jury on "proximate causation" were inadequate; (6) cautionary instructions on the effect of federal income taxes on the damages awarded should have been given to the jury; (7) the defendant either should have been permitted to impeach the jury's verdict, or should have been granted a new trial when it became known to the court that the jury failed to follow the court's instructions with regard to damages.

The defendant's motions will be denied.

(1) Viewing the evidence in the light most favorable to the plaintiff (Lind v. Schenley Industries, Inc., 278 F.2d 79 (3d Cir. 1959), cert. denied, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960)), the jury could reasonably have found the facts to be as follows:

On the afternoon of September 25, 1964, Domeracki was a member of a work crew assigned by his employer, the Philadelphia Ship Maintenance Co., to load stores, including 3 or 4 heavy crates of machinery weighing 300–350 pounds each, aboard the SS ESSO LIMA. Although the vessel's mate was aware of the size and weight of the crates, he denied the request of the foreman of the work crew to use the ship's boom for loading the stores. The foreman then ordered his crew to load the stores by passing them through the pipe rail, an opening in the railing of the ship crossed by two chains which lock onto the side railing. The lower chain was disengaged and dropped, but the longshoremen were unable to free the upper chain because the lock was rusted and frozen. The mate was informed that the chain was frozen but he did nothing to correct it, telling the foreman to do the best he could. The work crew then proceeded to attempt to load the stores by passing them through the opening between the lip of the ship and the upper chain. The mate was on deck in the vicinity while the loading operation was going on. While one of the heavy crates of machinery was being thus loaded it was blocked by the upper chain. Domeracki lifted the chain and at the same time pressed down on the crate to permit his co-workers to push the crate onto the deck. While plaintiff was in this precarious position, the crate slipped and plaintiff felt a sharp pain in his back. He was unable to perform further duties that day.

Plaintiff offered expert testimony to the effect that the method utilized to load the stores was improper; that the

was plaintiff's injury proximately caused by defendant's breach of duty set forth in

 1(a)? Yes <u>X</u> No ___
 1(b)? Yes <u>X</u> No ___
 1(c)? Yes <u>X</u> No ___

"3. Was defendant shipowner negligent in failing to provide a reasonably safe place for plaintiff to work?

 Yes <u>X</u> No ___

"4. If your answer to Interrogatory No. 3 is YES, was plaintiff's injury proximately caused by that negligence?

 Yes <u>X</u> No ___

"5. In what amount do you assess plaintiff's damages?

 <u>$270,982.00</u>

"6. Was plaintiff guilty of contributory negligence?

 Yes ___ No <u>X</u>

"7. If your answer to Interrogatory No. 6 is YES, to what extent (stated in percentage) did plaintiff's negligence contribute to his injury?

 _____ %

ship's boom should have been made available to the longshoremen; and that the upper chain should not have been frozen.

As a result of the occurrence, plaintiff suffered two herniated discs. One was corrected by surgery, but plaintiff refused further surgery because of fear and uncertainty as to the success of a second operation. Domeracki's doctors testified that he will continue to suffer pain in his back and numbness in his leg, and that he will no longer be able to perform manual labor.

■ By its answers to the court's interrogatories, the jury found that defendant breached its duty to furnish a seaworthy vessel (a) by furnishing defective equipment (the frozen chain); (b) by failing to supply adequate equipment (the ship's boom); and (c) by permitting an improper method of loading; that defendant was negligent in failing to provide a reasonably safe place for plaintiff to work; that plaintiff was not contributorily negligent; that defendant's failure to maintain a seaworthy vessel and the defendant's negligence were the proximate causes of plaintiff's injuries, and assessed damages in the total amount of $270,982.

The jury's special verdict as to defendant's breaches of duty and causation was based on ample evidence and consequently the verdict must stand. Cf. Blackburn v. Aetna Freight Lines, Inc., 250 F.Supp. 289 (W.D.Pa.), aff'd, 368 F.2d 345 (3d Cir. 1966); Tarter v. Souderton Motor Co., 257 F.Supp. 598 (E.D.Pa.1966).

■ (2) Defendant contends that the $270,982 award was excessive and that it was the result of passion and prejudice occasioned by plaintiff's counsel's remarks during summation concerning the then recent discovery by the corporate defendant of huge oil reserves in Alaska. The defendant, however, failed to object to the remarks at the time and is precluded from raising the objection now. Uhl v. Echols Transfer Co., 238 F.2d 760, 765 (5th Cir. 1956); Levin v. Trans World Airlines, Inc., 201 F.Supp. 791 (W.D.Pa.1962); Russell v. Monongahela Ry. Co., 159 F.Supp. 650 (W.D. Pa.), aff'd, 262 F.2d 349 (3d Cir. 1958). In any event the remarks were not so prejudicial as to justify a new trial, particularly in view of the cautionary instructions given to the jury. Cf. Marchant v. American Airlines, Inc., 146 F. Supp. 612 (D.C.R.I.1956), aff'd, 249 F. 2d 612 (1st Cir. 1957).

■ As to the amount of the award, although high, it was within reasonable limits. The evidence established that past medical expenses and loss of earnings totalled approximately $31,000. At the time of trial, the plaintiff had a life expectancy of approximately 34 years and had little chance of rehabilitation. Even under defendant's assuredly conservative figures, the present worth of plaintiff's future earnings loss would be at least $100,000. The jury could very properly have awarded $140,000 for past and future pain and suffering and loss of life's pleasures. The award was based on sufficient evidence and was not so high as to shock the conscience of the court. Thompson v. Calmar Steamship Corp., 331 F.2d 657 (3d Cir.), cert. denied, 379 U.S. 913, 85 S.Ct. 259, 13 L. Ed.2d 184 (1964); Russell v. Monongahela Ry. Co., 262 F.2d 349 (3d Cir. 1958); Mainelli v. Haberstroh, 237 F. Supp. 190 (M.D.Pa.1964), aff'd per curiam, 344 F.2d 965 (3d Cir. 1965).

■ (3) During the summation by plaintiff's counsel, reference was made to a separate indemnity action instituted by the defendant against the plaintiff's employer. Defendant immediately objected, and I gave cautionary instructions to the jury to disregard the remarks and admonished counsel for having made them. I cannot understand how the comment can be considered prejudicial in light of the fact that in most suits by longshoremen against vessels, the indemnity action by the vessel against the stevedore is tried before the same jury as a third-party action in the longshoreman's suit. Again, however, whatever prejudice might have resulted

was eliminated by cautionary instructions. Cf. Marchant v. American Airlines, Inc., *supra*.

(4) Defendant's counsel requested certain points for charge (notably his numbers 12–15 inclusive).[2] I refused to charge the jury precisely as defendant requested and defendant took exceptions.

██ One request, although couched in terms of contributory negligence, actually sought an instruction charging plaintiff with assumption of risk. Assumption of the risk, however, is not a defense in longshoremen cases. 46 U.S.C. § 688, 45 U.S.C. § 54; Adams v. United States, 393 F.2d 903 (9th Cir. 1968). A proper instruction was given to the jury on contributory negligence to the effect that plaintiff would be contributorily negligent only if he failed to act with reasonable care under all the circumstances, including the hazardous conditions. See Ktistakis v. United Cross Navigation Corp., 316 F.2d 869 (2d Cir.), appeal after remand, 324 F.2d 728 (2d Cir. 1963), cert. denied, 377 U.S. 915, 84 S.Ct. 1179, 12 L.Ed.2d 185 (1964).

██ Another request for charge presented by defendant sought an instruction to the effect that the vessel owner was not liable if he did not have actual or constructive notice of the hazardous conditions. Notice, or the lack thereof, is no defense to the unseaworthy condition of the vessel. Poignant v. United States, 225 F.2d 595 (2d Cir. 1955). A proper instruction was given to the jury, however, to the effect that a shipowner's duty to maintain a reasonably safe place to work requires that the shipowner have actual or constructive knowledge of the hazardous conditions. See Gutierrez v. Waterman Steamship Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L. Ed.2d 297, reh. denied, 374 U.S. 858, 83 S.Ct. 1863, 10 L.Ed.2d 1082 (1963).

██ Defendant also requested a charge on "operational negligence." This doctrine holds that negligence by fellow longshoremen in the operation of otherwise seaworthy equipment does not make the vessel unseaworthy. Price v. SS Yaracuy, 378 F.2d 156 (5th Cir. 1967). Since in this case there was unseaworthiness in the failure to furnish adequate equipment (ship's boom) and since there was admittedly unseaworthy equipment (the frozen chain) used by the longshoremen, an instruction on "operational negligence" was not relevant to the case, and the point was properly refused.

██ Defendant also requested that the jury be charged that an improper method of loading does not make a vessel unseaworthy. In support of that request, defendant erroneously relied upon Morales v. City of Galveston, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962). Both the Supreme Court in *Morales* and the Court of Appeals for this Circuit in Thompson v. Calmar Steamship Corp., *supra*, have held that an improper method of loading may

---

2. The points requested by defendant's counsel were as follows:

"12. If you believe that Mr. Domeracki continued to work under conditions such as the stuck chain rail, improper use of equipment and failure to inspect the area in which he worked, and the conditions were known to him as likely to cause harm and he was hurt, you may find that Mr. Domeracki was contributorily negligent and should deduct from any recovery whatever percentage you find he contributed to his own injury.

"13. The vessel owner cannot be held responsible for the negligence of the fellow employees of plaintiff unless the facts indicate that the owner or the vessel's agent knew or should have known of the existence of a dangerous condition. (Citations omitted).

"14. The operational negligence of otherwise seaworthy equipment by a fellow longshoreman does not make a vessel unseaworthy. (Citations omitted).

"15. If you find that the cause of plaintiff's injury was not the ship, its appurtenances, or its crew, but the isolated and unforeseeable introduction of an improper loading method by the independent employees hired by the vessel then the defendant cannot be held liable. Morales v. City of Galveston, 370 U.S. 165 [82 S.Ct. 1226, 8 L.Ed.2d 412] (1962).

make a vessel unseaworthy. I charged the jury accordingly.

(5) Defendant asserts that the jury's findings that the failure to provide the ship's boom and to properly maintain the upper chain of the pipe railing evidence the jury's misunderstanding of the definition of "proximate causation". This conclusion is grounded on defendant's flat assertion that as a matter of law these events were too remote to be considered substantial factors in causing harm to plaintiff. Defendant states that the jury's confusion was probably due to the failure to reiterate the definition of proximate cause at the time the jury was charged on how to answer the interrogatories.

 There was sufficient evidence that these breaches of duty were substantial factors in causing plaintiff's injuries. I cannot assume that the jury misunderstood an admittedly proper instruction or that its memory was so short that the charge should have been repeated.

(6) A verdict awarding damages for future loss of income in a personal injury action is not subject to federal income taxes. 26 U.S.C. § 104. Defendant argues that the jury should have been told that the award to plaintiff would not be subject to federal income taxes.

 I see no reason why the defendant should gain a reduction in the verdict because of a tax advantage Congress has granted to the injured plaintiff. The majority rule, which has been consistently adhered to in this district and in other courts in this circuit, is that it is not reversible error to refuse to give an instruction on the income tax effect of an award. Chicago & N. W. Ry. Co. v. Curl, 178 F.2d 497 (8th Cir. 1949); Culley v. Pennsylvania R. Co.,

244 F.Supp. 710 (D.Del.1965); Altemus v. Pennsylvania R. Co., 32 F.R.D. 7 (D. Del.1963). See LeRoy v. Sabena Belgian World Airlines, 344 F.2d 266 (2d Cir.), cert. denied, 382 U.S. 878, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965); Girard Trust Corn Exchange Bank v. Philadelphia Transportation Co., 410 Pa. 530, 190 A.2d 293 (1963); Annot., 63 A.L.R. 2d 1378 (1959).

(7) Defendant's final argument revolves around an unusual incident which took place after the verdict had been recorded and the jury dismissed. At that time, the courtroom clerk handed to me two sheets of yellow scratch paper.[3] One piece of paper contained a notation of the amount awarded by the jury to the plaintiff and the signatures of each of the jurors beneath it. The second sheet contained some computations (the exact nature of which has now happily slipped my memory), which apparently had something to do with the jury's calculations in regard to damages. I made a comment to counsel to the effect that I believed that these computations indicated that the jury failed to follow the court's instructions in regard to damages, (N.T. pp. 390, 398) but I did not permit counsel to see the second sheet of paper.

 Counsel for defendant contends that the papers should have been given to him to enable him to impeach the jury's verdict, and that the court's refusal to grant this request is ground for a new trial.

Even if I were to assume that the papers evidence the jury's confusion on calculating damages, the verdict was still proper. Whatever occurred in the jury room "inheres" in the recorded verdict. Farmers Co-op. Elevator Ass'n Non-Stock, etc. v. Strand, 382 F.2d 224, 230 (8th Cir.), cert. denied, 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659

3. The Marshal received the papers from the forelady with the exhibits, and handed all materials to the courtroom clerk after the verdict was recorded. Upon seeing the nature of these papers, the clerk presented them to me.

Both pieces of paper have been sealed and impounded pursuant to my order of May 22, 1969, and will be available for examination by the appellate courts if they deem examination necessary or proper.

(1967), reh. denied, 390 U.S. 913, 88 S. Ct. 815, 19 L.Ed.2d 887 (1968). Cf. Finn v. Carnegie-Illinois Steel Corp., 68 F.Supp. 423 (W.D.Pa.1946). It was not proper even for the court to examine the content of the papers. By doing so, in effect, the court intruded upon the jury's deliberative process. It would have been highly improper to permit counsel to examine the papers and inquire into the means by which the jury arrived at its proper verdict. Cf. Chicago, R. I. & P. R. Co. v. Speth, 404 F.2d 291 (8th Cir. 1968). The situation here is somewhat analogous to those cases in which the jury adds some commentary to its verdict. It has been consistently held that such gratis comments are to be disregarded and the recorded verdict finalized. See, e. g., Hong Sai Chee v. Long Island R. Co., 328 F.2d 711 (2d Cir. 1964); Cleary v. Indiana Beach, Inc., 275 F.2d 543 (7th Cir.), cert. denied, 364 U.S. 825, 81 S.Ct. 62, 5 L.Ed. 2d 53 (1960).

Since none of the defendant's contentions have any merit, an order will issue denying defendant's motions for judgment notwithstanding the verdict or in the alternative for a new trial.