## Girard Trust Corn Exchange Bank, Appellant, *v.* Philadelphia Transportation Company.

Argued November 28, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

reargument refused May 6, 1963.

*John V. Lovitt,* with him *George E. Beechwood,* and *Beechwood & Lovitt,* for plaintiffs.

*H. Francis DeLone,* with him *Thomas C. McGrath, Jr.,* and *Dechert, Price & Rhoads,* for transportation company, defendant.

*Lynn L. Detweiler,* for individual and insurer, defendants.

OPINION BY MR. JUSTICE EAGEN, March 19, 1963:

James T. Haviland, sixty-seven years of age, a passenger in an automobile owned by the Lumbermans Mutual Casualty Company (Lumbermans) and operated by one Robert E. Lee, was killed when the automobile was struck by a bus owned by the Philadelphia Transportation Company and operated by one of its employees.

The plaintiffs, Marjorie Arny and Nancy McCowan, daughters of Haviland, instituted a wrongful death action against the Philadelphia Transportation Company. The plaintiff, Girard Trust Corn Exchange Bank, Executor of Haviland's estate, sued the same defendant under the Pennsylvania Survival Statute. Lumbermans and Lee were joined as additional defendants in both actions, which were consolidated for the purposes of trial. The jury returned a verdict in favor of the plaintiffs and against the original defendant, the Philadelphia Transportation Company alone.[1] The award

---

[1] In answer to special questions submitted, the jury specifically found that the negligence of the bus operator was the proximate cause of the accident, and that Lee was free of negligence.

in the wrongful death action was $35,300 and in the survival action $132,210.

Post trial, the plaintiffs filed a motion to modify and increase the verdicts, which the court below denied. The defendant, the Philadelphia Transportation Company, filed a motion for a new trial and judgment non obstante veredicto. The court refused judgment n.o.v. but granted a new trial. All parties involved appealed.

The collision occurred at 9:30 o'clock at night at the intersection of 22nd Street and the Benjamin Franklin Parkway in the City of Philadelphia. Lumbermans' automobile, operated by Lee, was proceeding west in the most southerly lane of the north tier of the parkway. This is a one-way thoroughfare for west-bound traffic and it is 80 feet in width. The bus was traveling south on 22nd Street, which was for one-way southbound traffic. Twenty-second Street is 50 feet wide and there is a single set of transit trolley car tracks located in the center of the roadway. The intersection was controlled by a traffic light and the testimony at trial was in sharp conflict as to which vehicle was proceeding on the green light. The front of the bus struck the right side of Lumbermans automobile, when the latter vehicle was more than two-thirds through the intersection. The force of the impact threw Lumbermans' automobile up against a tree located on the grass plot maintained between the north and south tiers of the parkway. Haviland was forcibly ejected or thrown from the automobile, suffering injuries which caused his death nineteen days later.

## Judgment n.o.v.

Lee was called as a witness by the plaintiffs. It is the contention of the transportation company that Lee's own testimony convicts him of negligence as a matter of law, that the plaintiffs are bound by his

testimony and that his negligence is imputable to Haviland. It is urged that Lee admittedly did not look to his right at the intersection (the direction from which traffic was approaching on 22nd Street). until the automobile he was operating was at least two-thirds through the intersection. If this be the fact, Lee was guilty of negligence as a matter of law. At an intersection, an operator of a motor vehicle must be vigilant and look for approaching traffic before attempting to cross the intersecting street. This responsibility is no less binding at an intersection controlled by a traffic light: *Perpetua v. Philadelphia Transportation Co.,* 380 Pa. 561, 112 A. 2d 337 (1955); *Enfield v. Stout,* 400 Pa. 6, 161 A. 2d 22 (1960).

The testimony of Lee is conflicting in this important respect. On direct examination, he stated that *before* proceeding through the intersection, he looked to his right and to his left. Again, on cross-examination, he said he first looked in both directions "before I entered the intersection." Subsequently, on cross-examination, he testified that the first time he looked to his right was when the automobile was almost through the intersection. *The witness was not confronted with this conflict or contradiction.* The case of *Smith v. Flannery,* 383 Pa. 526, 119 A. 2d 224 (1956), is controlling, wherein at page 531, this Court speaking through Mr. Chief Justice STERN said: " 'This testimony was contradictory, and the net result of it by no means clear. On part of it he was plainly entitled to go to the jury, on the other part equally plainly he was not. Under these circumstances the case must go to the jury, whose province it is to reconcile conflicting statements, whether of the same or different witnesses, or to draw the line between them and say which shall prevail.' " Further, it is fundamental that in considering the merits of a motion for judgment n.o.v., the testimony must be read in the light most favorable to plaintiffs' case, *Stimac v. Bar-*

*key,* 405 Pa. 253, 174 A. 2d 868 (1961). Additionally, contributory negligence, as a matter of law, should be declared only in a very clear case and only where the evidence of such is so clear and palpable that there is no room for fair and sensible men to differ as to its existence. See, *Dougherty v. Philadelphia Nat'l Bank,* 408 Pa. 342, 184 A. 2d 238 (1962) and *Enfield v. Stout,* supra. The case of *Stewart v. Ray,* 366 Pa. 134, 76 A. 2d 628 (1950), and similar authorities do not apply, because the witness in this instance was not confronted with the contradictory statements in his testimony. The question of Lee's negligence was for the determination of the jury and judgment n.o.v. was properly refused.

## New Trial

The lower court stated that the interests of justice required the grant of a new trial. An examination of the record manifests ample valid reasons to support this conclusion.

Plaintiffs' counsel's argument to the jury was in part inflammatory and prejudicial. It was beyond the limits of fair, sound, factual argument, undoubtedly influenced the very generous verdict of the jury and may well have induced the decision as to liability. It warranted the immediate withdrawal of a juror. See, *Saxton v. Pittsburg Railways Co.,* 219 Pa. 492, 68 A. 1022 (1908); *Joyce v. Smith,* 269 Pa. 439, 112 A. 549 (1921); *Piwoz v. Iannacone,* 406 Pa. 588, 178 A. 2d 707 (1962). This in itself was sufficient to lead the lower court in the exercise of a wise discretion to the conclusion that a new trial was necessary.

Additionally, the testimony of Lee, as noted before, was conflicting and contradictory in a very important respect. Further, his testimony that he had the green light was contradicted by other witnesses, who testified on the plaintiffs' side of the case. His testimony was also at odds with the undisputed facts concerning the

working operation of the traffic light at this intersection and raises serious doubt as to the credence of his statements. Under such circumstances, it was clearly not an abuse of discretion for the lower court to grant a retrial.

Since the issue must be retried, discussion of other relevant questions is indicated.

The lower court concluded that, under the established facts, Lee was the servant of Lumbermans, engaged in the furtherance of its business and *it alone* was responsible for his acts on the occasion involved. We disagree.

The testimony pertinent to this facet of the case may be summarized as follows:

Haviland was employed by Lumbermans in the role of Senior Vice-President. Upon reaching retirement age, he retired and immediately commenced receiving a pension allowance. Peculiarly, he was immediately rehired to perform substantially the same duties in consideration of the payment of about one-half his former salary plus the furnishing and maintenance by Lumbermans of an automobile and a chauffeur for his personal exclusive use. He continued to receive the pension payments.

The automobile was provided by Lumbermans. Lee, the chauffeur, was selected by Haviland with Lumberman's approval. Lee was paid by Lumbermans. He had never worked for Lumbermans previously and was not so employed after Haviland's death. The automobile was garaged at Haviland's home. Lee drove Haviland exclusively and received daily directions from him alone. On the usual day, Lee drove Haviland from his home to the office; picked him up at noontime and drove him to his club for lunch; drove him back to the office; picked him up later on in the day and drove him to his club for dinner; later on drove him back to his home. On one occasion, he drove him to Florida.

On the day in question, Lee drove Haviland to Summit, New Jersey, to attend a business meeting for Lumbermans. That evening, Haviland represented the company at a dinner-business meeting in the Warwick Hotel in Philadelphia. It was on the way home immediately following the dinner meeting that this unfortunate accident occurred.

There is no question that on the occasion involved, Lee was acting in the furtherance of Lumbermans' business. At trial, it was admitted that it was answerable for any existing negligence on the part of Lee. However, a person may be the servant of two masters or at least subject to the exercise of the right of control of two different individuals at one and the same time. See, *Koontz v. Messer,* 320 Pa. 487, 181 A. 792 (1935); *Siidekum v. Animal Rescue League,* 353 Pa. 408, 45 A. 2d 59 (1946); Restatement, Agency §226. The mere fact that the servant's salary is paid by only one is not controlling, *Atherholt v. Stoddart Co.,* 286 Pa. 278, 133 A. 504 (1926). In determining if any negligence on the part of Lee was also imputable to Haviland, the pivotable question concerns Haviland's *right to exercise control* over Lee's actions at the time of the accident. We conclude that Haviland clearly had that right. See, *Schofield v. Dir. Gen. of Railroads,* 276 Pa. 508, 120 A. 449 (1923); *Rodgers v. Saxton,* 305 Pa. 479, 158 A. 166 (1931); *Valera v. Reading Co.,* 349 Pa. 123, 36 A. 2d 644 (1944); and *Beam v. Pittsburgh Railways Co.,* 366 Pa. 360, 77 A. 2d 634 (1951). The testimony on plaintiffs' side of the case was abundant that Haviland enjoyed the right to share in the control of the vehicle. In fact, it was absolute. Under such circumstances, if Lee were negligent it was imputable to Haviland.

While there is testimony in the record that Haviland suffered from "night blindness" and could not drive an automobile, there is no evidence that he at any time or

in any instance abdicated or relinquished his right to exercise control over Lee's actions. Lee had no alternative but to follow Haviland's instructions to the letter. The latter's right to exercise control was in no way affected. The fact that an owner of an automobile or one in absolute charge thereof cannot operate it does not in itself negative his right to exercise control over the driver: *Jimmo v. Frick*, 255 Pa. 353, 99 A. 1005 (1917).

Finally, the trial court instructed the jury that in fixing damages, income taxes should be deducted from the gross earnings of the decedent. The question is one of first impression in Pennsylvania. The majority rule in the United States is that in fixing damages for the determination of decedent's earning capacity, the income tax consequences of the matter should not be taken into consideration. See, "Propriety of taking income tax into consideration in fixing damages in personal injury or death action," 63 A.L.R. 2d 1393.[2] This, in our opinion, is based upon sound legal reasoning and is now announced as the rule to be followed in Pennsylvania. Any other rule would lead to incongruous results.

Orders affirmed.

---

[2] See also: Income Taxes as a Factor in Assessing Damages in Personal Injury Cases, (H. B. Levin) Vol. XXXIV, Pennsylvania Bar Association Quarterly, page 538 (March, 1963).