OPINION OF THE COURT
Bellacosa, J.
In this action for wrongful death and conscious pain and suffering, we focus primarily on defendant’s argument that the trial court erred in two respects on damages: (1) excluding evidence of the decedent’s after-tax income for calculating damages based on the lost wages component; and (2) refusing to instruct the jury that, despite the over-all nontaxability of the award, the part of the damages calculation on decedent’s lost wages component should nevertheless be based on decedent’s net rather than gross income. Defendant also argues that, in any event, it should not be held liable in negligence under any theories advanced at trial.
 We affirm the order of the Appellate Division and hold that the trial court did not err in its evidentiary or charge rulings on the tax aspects of the damages calculation. We further hold that liability was properly imposed against MABSTOA.
I. FACTS AND TRIAL
On the morning of September 27, 1979, a bus driver employed by defendant Manhattan and Bronx Surface Transit Operating Authority (MABSTOA) returned the bus he had been driving to defendant’s depot located between 146th Street and 147th Street and reported that he was sick. The MABSTOA dispatcher told the driver to "park the bus” and to sign himself out for the day. The driver parked the bus on 146th Street, outside the depot.
Shortly afterwards, the bus was driven away by one Thomas *202 Jones, who had been drinking since the night before and who was, by .his own admission, "loaded”. According to his testimony, Jones was walking towards Lenox Avenue to catch a bus to the Port Authority bus terminal when he spotted the parked unattended bus. He entered the bus by opening the driver’s side window and pulling the lever to open the door. Once inside the bus, he pushed the starter button on the dashboard, put the bus in gear, closed the door and drove off. At the corner of 146th Street, Jones made a wide left turn onto Lenox Avenue and struck the decedent, Veronica Ashby. The bus dragged the victim nearly a block, striking other vehicles, and killing another pedestrian before coming to rest.
Plaintiff, the decedent’s mother and administratrix of her estate on behalf of decedent’s minor child, commenced this action for wrongful death and conscious pain and suffering. MABSTOA’s liability was premised on common-law negligence and violation of Vehicle and Traffic Law § 1210 (a), which provides that "[n]o person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the kcsy from the vehicle, and effectively setting the brake thereon”.
At trial, plaintiff’s economist testified as to the decedent’s lost earnings. On cross-examination in this respect, defense counsel questioned only whether the calculation was based on gross income or after-tax income. The economist responded that the figures were based on the decedent’s gross income at the time of death. At that point, the court interjected and informed the jury: "Income taxes of whatever nature, be they federal, state or city, should not be considered by the jury in arriving at the ultimate determination.” Defense counsel made no objection to the economist’s response or to the instruction.
At the close of proof, defense counsel requested that the jury be instructed to calculate the pecuniary loss to decedent’s daughter in the following manner:
"In considering what award you made for any loss by decedent’s children of decedent’s past and future earnings, please consider the following:
"Had decedent lived, the money she earned at her job as a police aide would have been subject to federal, state and city tax withholdings.
"But any award you make to decedent’s pecuniary beneficiaries for the loss of their mother’s income will not be subject to *203 any tax, federal, state or city. In arriving at any decision on the award for the loss of decedent’s future earnings you should consider the fact that your award will not be subject to taxes, and will therefore exceed what decedent’s take-home pay would have been during her working career.
"Your award, if any, should only equal the net pay decedent would have received had she lived [emphasis supplied].”
The court, over defense counsel’s objection, refused to give the requested charge.
The jury found defendant MABSTOA liable on common-law negligence and on the statutory violation. Plaintiff was awarded $800,000 for the wrongful death and $3.2 million for the conscious pain and suffering of the decedent. The trial court later granted defendant’s motion to set aside the verdict unless plaintiff accepted a reduction of the award for conscious pain and suffering to $250,000. Plaintiff stipulated to accept the lower amount and the judgment then fixed damages at $800,000 for wrongful death and $250,000 for pain and suffering. The Appellate Division affirmed, without opinion.
Defendant MABSTOA appeals, urging: (1) the trial court erred in excluding proof of decedent’s after-tax income and in refusing defendant’s requested jury instruction for a net income computation; (2) the "key-in-the-ignition” statute (Vehicle and Traffic Law § 1210 [a]) is not applicable to vehicles equipped with a push button starter; (3) common-law negligence was not established.
II. DAMAGES — TAX IMPLICATIONS
One of the important issues raised by defendant relates to claimed excessiveness of the final award in that it was improperly inflated due to the jury’s misunderstanding of tax implications resulting from the allegedly erroneous evidentiary ruling and from the lack of proper jury instruction.
In wrongful death cases, an award of damages is limited to the "fair and just compensation for the pecuniary injuries resulting from the decedent’s death to the persons for whose benefit the action is brought” (EPTL 5-4.3). In determining what is "fair and just compensation”, factors which have traditionally been considered include: the age, health and life expectancy of the decedent at the time of the injury; the decedent’s future earning capacity and potential for career advancement; and the number, age and health of the dece *204 dent’s distributees (Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 5-4.3, at 497-498). Generally, evidence of a decedent’s gross income at the time of death is the standard to measure the value of income already lost and to measure the loss of future earnings (Woodling v Garrett Corp., 813 F2d 543, 557-558 [2d Cir] [and cases cited in that opinion]).
On appeal, defendant urges that a worker’s ability to contribute to the support of a family is directly affected by the amount of taxes owed to the government, and after-tax or net income rather than gross income provides the more realistic and legally correct measure of the monetary loss suffered. While there is respectable authority (Norfolk & W. Ry. Co. v Liepelt, 444 US 490, 494 [1980], reh denied 445 US 972; Morgan Guar. Trust Co. v Texasgulf Aviation, 604 F Supp 699 [1985]), and while abstract logic could favor defendant’s view, we conclude that such a rule would inject an unacceptably speculative and distracting feature into the jury’s consideration of damages, and thus we reject it as a matter of statutory construction, practical policy and sound jurisprudence.
No crystal ball is available to juries to overcome the inevitable speculation concerning future tax status of an individual or future tax law itself. Trial strategies and tactics in wrongful death actions should not be allowed to deteriorate into battles between a new wave of experts consisting of accountants and economists in the interest of mathematical purity and of rigid logic over less precise common sense. Countless numbers of unknown and unpredictable variables for tax purposes alone include, as mere examples, future marital and family status, changes in rates, exemption and deduction provisions of overlapping tax codes. All sides to this issue would no doubt agree at least that this could produce much guesswork. So, a majority of jurisdictions have wisely stayed with a rule precluding evidence of after-tax income on the earnings damage issue to avoid "turning every negligence case into a trial [at least] of the future federal income tax structure” involving "a parade of tax experts” (Nordstrom, Income Taxes and Personal Injury Awards, 19 Ohio St LJ 212, 228 [1958]; Vaughan, Tax Issues of Personal Injury and Wrongful Death Awards, 19 Tulsa LJ 702 [1984]; see also, Cunningham v Rederiet Vindeggen A/S & M/S Trolleggen, 333 F2d 308, 313 [2d Cir 1964]; see also, Beaulieu v Elliot, 434 P2d 665, 673 [Alaska 1967]; Dempsey v Thompson, 363 Mo 339, 251 SW2d 42, 45 [1952]; Girard Trust Com Exch. Bank v Philadelphia *205 Transp. Co., 410 Pa 530, 538, 190 A2d 293, 298 [1963]; Hoge v Anderson, 200 Va 364, 106 SE2d 121, 123-124; Annotation, 16 ALR4th 589, 605-609). We are persuaded that the gross income standard was correctly applied with respect to calculations of lost wages in this case.
Support for the correctness of our policy choice is particularly found in the recent legislative enactment specifically authorizing evidence of after-tax income to be considered only in medical and dental malpractice personal injury and wrongful death actions (see, L 1986, ch 266, §§ 4, 6; EPTL 5-4.3 [c]; CPLR 4546). This is not such a case. The implied recognition of the general exclusion of tax considerations, incorporating a specific authorization in specified cases, clearly suggests that any expansion of these rules for now should come from the Legislature. It is especially pertinent to note that this limited statutory authorization came about in the context of a complex negotiation addressing many facets of the so-called insurance and liability crises. The final legislative package, for example, rejected a proposed ceiling on recoveries for noneconomic damages despite a recommendation (among an 18-point program) to the contrary by the Governor’s Advisory Commission on Liability Insurance (Insuring Our Future, Report of Governor’s Advisory Commission on Liability Insurance, Apr. 7, 1986). Instead the Legislature adopted a limited approach designed to reduce proportionately the size of some verdicts by allowing the trier of fact to consider the impact of personal income tax when determining an award for lost earnings only in the specified malpractice categories.
Notably, the charge requested by defendant in this case is also in sharp contrast to the general nontaxability instruction which we approve in Lanzano v City of New York (71 NY2d 208). Indeed, our rejection in this case of defendant’s desire to use after-tax income — through the admission of net income evidence coupled with a corresponding jury instruction — is consistent with the policy rationale of Lanzano v City of New York (id.) because both keep tax complications out of the jury’s deliberations. Contrary to Lanzano, whose precise issue is neither presented or preserved here, this defendant requested a charge which would have taken the jury a great distance beyond Lanzano’s mere instruction of nontaxability and nonrelevancy; it would have required the jury to calculate the lost wages component of the over-all damages award based on the decedent’s after-tax income. Where Lanzano takes tax entanglements out of a case and out of misinformed specula *206 tion, defendant’s contention in this case would drive the tax consideration right back into the heart of the deliberations.
There should be no illusion but that introduction of evidence of after-tax income is intended to lessen the over-all amount of awards by decreasing the components, formulas and foci of the jury. While we fully recognize the lack of mathematical certainty of jury damage awards, we are also realists appreciating the futility of expecting these kinds of unknowable projections to change very much except perhaps to add bedeviling confusion.
In this case, the court’s charge to the jury properly reflected standard principles (accord, PJI 2:320 [2d ed 1974]). Indeed, while this court has not up to now definitively spoken to the gross versus net income issue, there can be no doubt that defendant’s argument, were it to be adopted, would mark a significant shift in our law of damages.
We hold that without express statutory direction to the contrary, the damages component of a plaintiff’s award as to lost wages in this action should be based on gross projected earnings and no deduction or consideration of after-tax net should be allowed into evidence or charged to the jury. '
With respect to the adequacy of the jury instruction given on damages and on taxation aspects of this case, defendant failed to object to the trial court’s instruction that "income taxes of whatever nature” should not be considered by the jury, so that aspect of the case is unpreserved and beyond our review (see, Lanzano v City of New York, 71 NY2d 208, supra).
III. LIABILITY
Turning to the statutory violation theory, we note that to sustain defendant’s liability on this basis plaintiff must establish: (1) that the statute is applicable; (2) that the statute was violated; and (3) that plaintiff was injured as a consequence of the violation (Homin v Cleveland & Whitehill Co., 281 NY 484, 488; Prosser and Keeton, Torts § 36 [5th ed]). Defendant contends that Vehicle and Traffic Law § 1210 (a) is inapplicable because no key was left in the ignition. We disagree. The decedent was within the class of persons the Legislature sought to protect and the harm suffered is the kind which the statute was intended to prevent inasmuch as the bus was equipped with a push button starter and, if left unattended with an unlocked ignition, the engine could be *207 started without a key just like any vehicle left with a key in the ignition.
In recognition of the fact that auto theft is a crime of opportunity, the Legislature enacted Vehicle and Traffic Law § 1210 (a) to serve as a deterrent to such opportunities and to protect the public from injury due to the operation of motor vehicles by unauthorized persons (Report of Joint Legis Comm on Motor Vehicle Problems, 1954 NY Legis Doc No. 36, at 106-107). Here, testimony clearly established the bus was unattended, the windows were unlocked and the safety switch, which could have locked the ignition and prevented the operation of the push button starter by a thief, was not engaged by defendant’s employee. Thus, the defendant provided the opportunity for the theft in violation of the statute and started the chain of events causing and culminating in the deaths of two pedestrians. That the engine could be started without a key does not take the case out of the statute for civil liability purposes under these circumstances because the modern device employed here and designed for the benefit of the defendant is the functional equivalent of the leaving-the-key-in-the-ignition danger that the statute forbids.
Finally, since liability was properly imposed on the basis of the statutory violation, we need not consider defendant’s common-law negligence argument.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order affirmed, with costs.