OPINION OF THE COURT
Daniel Palmieri, J.
The motion by defendant Frank (sequence No. 1) and the motions (incorrectly denominated as cross motions) by defendants Hall (sequence No. 2), South Nassau Communities Hospital (sequence No. 3), and Partridge and DeBrady (sequence No. 4) to compel compliance with discovery demands relating to (i) the medical records of plaintiffs’ decedent Jeffrey Mark Friedman, and (ii) records pertaining to loss of earnings or other economic loss are granted to the extent set forth below (CPLR 3101, 3124). The cross motion by plaintiffs for a protective order and other relief, pursuant to CPLR 3103, is denied.
Plaintiffs shall, no later than 5:00 p.m. June 15, 2007, comply with all discovery demands heretofore served by the defendants relating to (i) collateral source reimbursements received or expected to be received as to loss of earnings and economic loss resulting from pain and suffering and death of decedent, and (ii) authorizations for all records of all medical treatment or services rendered to the decedent relating to cardiac and abdominal care in both instances for the five-year period preceding the decedent’s date of death.
In the event that the plaintiffs fail to comply with this decision and order within the aforesaid time period, they shall, *323 without further order, be precluded from offering any evidence of damages at trial, in a motion or in any other matter associated with this case.
This is an action sounding in medical malpractice which allegedly resulted in decedent’s wrongful death. The complaint alleges a cause of action on behalf of the decedent for pain and suffering, medical expenses and other economic loss (first cause of action), a claim based on a lack of informed consent (second cause of action), a claim for loss of services to the spouse of the decedent (third cause of action), and a claim for pecuniary and nonpecuniary damages on behalf of the “lawful beneficiaries of” plaintiffs’ decedent, sounding in wrongful death pursuant to EPTL 5-4.3 (fourth cause of action).
The bills of particulars served upon defendants disclose that an expert economist is expected to testify and that a claim is made for lost earnings. Further, although the bills of particulars state that there is no claim for reimbursement of any expenses already paid or reimbursed from other sources, “plaintiffs reserve the right to introduce said amounts as a measure of damages at time of trial.” There is no limitation as to future reimbursements.
Decedent, at the time of his death on July 20, 2005, had recently attained the age of 42 years and was at the time of his death employed as an accountant. Plaintiff alleges that she was his wife and no other distributees are named.
Defendants have made discovery requests for collateral source reimbursements of economic loss, authorizations for employment and medical records and economic expert disclosure. Plaintiffs have refused to provide any collateral source information, income tax records or various medical records which also include records pertaining to health care and reimbursement of expenses thereof. Plaintiffs have refused to supply any information related to collateral sources of reimbursement other than those which specifically relate to loss of earnings and have cross-moved for a protective order against providing health care records, insurance records or hospital records. Alternatively, plaintiffs request that the court conduct an in camera review of such records prior to authorizing disclosure thereof. However, plaintiffs’ alternative request for an in camera review of records by the court is not supported by any evidence from a person with knowledge, is lacking in factual content and is conclusory.
Plaintiffs claim that the physician-patient privilege (CPLR 4504) is applicable to any medical condition not related to the *324 treatment and that decedent’s medical condition has not been waived. They insist that there should be no disclosure until plaintiff wife has been first deposed. Plaintiffs also claim that the demand for collateral source information is a “fishing expedition” and are offering to provide only records specifically dealing with loss of earnings.
CPLR 4504 is a statutorily created physician-patient privilege which did not exist at common law, but which may be waived by the patient or the personal representative of a deceased patient (CPLR 4504 [c]; Dillenbeck v Hess, 73 NY2d 278, 283-284 [1989]). Once the privilege has been asserted the seeker of the information must demonstrate waiver thereof (Koump v Smith, 25 NY2d 287, 294 [1969]), and the privilege is not terminated by death alone. However, where as here, a patient’s physical or mental condition is affirmatively placed in issue by decedent’s personal representative, waiver takes place. (Prink v Rockefeller Ctr., 48 NY2d 309, 313-315 [1979].)
Generally a party does not waive the medical privilege with respect to unrelated illnesses or treatments (Carboni v New York Med. Coll., 290 AD2d 473 [2d Dept 2002]), and a waiver of all medical conditions does not occur simply by instituting an action. (Strong v Brookhaven Mem. Hosp. Med. Ctr., 240 AD2d 726 [2d Dept 1997].)
It is undeniable that the essence of plaintiffs’ claims are the failure to evaluate and monitor decedent’s cardiac condition or to treat him for symptoms of abdominal pain; hence, plaintiffs have waived any privilege pertaining to decedent’s past medical condition in those areas. Except as to these records, defendants have failed to demonstrate at this juncture that all of decedent’s medical records are material and necessary to the defense of this action. (Chervin v Macura, 28 AD3d 600 [2d Dept 2006].)
Although an action for wrongful death implicates numerous issues which may tangentially relate to the general health of a decedent insofar as health may have a bearing on pecuniary loss, it is plain that our courts have not been willing to erode the strong public policy of this state favoring nondisclosure of privileged medical information. Thus, the mere circumstance of commencing a wrongful death action based on medical malpractice does not open the gate to disclosure of all medical information unless and until the issue is affirmatively placed in controversy. (Dillenbeck v Hess, 73 NY2d 278, 287 [1989]; Bobrowsky v Toyota Motor Sales U.S.A., 261 AD2d 349 [2d Dept 1999].)
*325 Competing here is New York’s policy as embodied in CPLR 4545 (a) and (c) disfavoring double recovery of damages in medical malpractice and wrongful death actions. (Iazzetti v City of New York, 94 NY2d 183 [1999]; Oden v Chemung County Indus. Dev. Agency, 87 NY2d 81 [1995].)
Insofar as is applicable here, defendants bear the burden of establishing entitlement to a reduction of any damage award for loss of earnings or other economic loss. Clearly the phrase “or other economic loss” read disjunctively from loss of earnings encompasses a host of factors that can be regarded as relating to economic loss.
Since an action for wrongful death and specifically this action seeks damages of a pecuniary nature, plaintiffs have waived any claim of privacy or privilege with respect to the financial affairs of the decedent and thus defendants are entitled to discovery of all matters pertaining to economic loss, including decedent’s income tax returns. (Scalone v Phelps Mem. Hosp. Ctr., 184 AD2d 65, 75 [2d Dept 1992].)
Further, defendants’ discovery should not, as plaintiffs suggest, be limited solely to loss of earnings. There is no doubt that the statutorily authorized damages for pecuniary injuries (EPTL 5-4.3 [a]) embodies concepts that exceed an inquiry merely limited to earnings. An award for wrongful death may consider evidence of the reasonable expectancy of financial support, gifts and inheritance that would have inured to those on whose behalf a claim is filed had the decedent lived. Other factors include age, health and life expectancy, future earning capacity and career potential. (Arias v State of New York, 8 Misc 3d 736, 741 [Ct Cl 2005].)
Specifically, income tax returns are relevant to the issue of economic loss (cf., Chang v SDI Intl. Inc., 15 AD3d 520 [2d Dept 2005]), and in fact necessary in a malpractice action in order for the court to perform its duties under CPLR 4546.
The standard by which to measure the value of lost earnings is the decedent’s gross income (Johnson v Manhattan & Bronx Surface Tr. Operating Auth., 71 NY2d 198 [1988]), and the best evidence thereof is the decedent’s income tax returns.
Moreover, EPTL 5-4.3 (c) (i) mandates that the jury in wrongful death actions predicated upon medical malpractice must be instructed to find with reasonable certainty the amount of taxes that a decedent would have been required by law to pay and to consider that amount in determining the sum that would be available for the support of the distributees.
*326 Based on the foregoing, plaintiffs shall, as set forth above, respond to demands for discovery of collateral source evidence pertaining to all economic loss, employment records as demanded and medical, income tax, and medical insurance records as demanded, limited in the case of medical and insurance reimbursement to records of decedent’s treatment for cardiac and abdominal matters.
Defendants are granted leave to renew the request for additional medical information upon a showing that the condition of decedent’s mental or physical health has been placed into controversy by plaintiffs.