Dawn E. HOYAL, surviving spouse of Arbuth Jay Hoyal, and Dawn E. Hoyal, as Personal Representative of the estate of Arbuth Jay Hoyal, Plaintiff,

v.

PIONEER SAND COMPANY, INC., Defendant.

No. 07SA249.

Supreme Court of Colorado, En Banc.

May 12, 2008.

Rehearing Denied June 2, 2008.*

The Waltz Law Firm, Richard A. Waltz, John G. Simmonds, K. Brandon Cline, Denver, CO, Attorneys for Petitioner.

Retherford, Mullen, Johnson & Bruce, LLC, Jerry A. Retherford, Anthony A. Johnson, Kelly M. Telfeyan, James C. Duve, P.C., James C. Duve, Colorado Springs, CO, Attorneys for Respondents.

Kennedy Childs & Fogg, P.C., John R. Mann, Jennifer C. Madsen, Denver, CO, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

Benson & Associates, PC, Jesse Howard, Witt Golden, CO Sears & Swanson, P.C., Victoria Swanson, Colorado Springs, CO, Attorneys for Amicus Curiae Colorado Trial Lawyers Association.

Justice HOBBS delivered the Opinion of the Court.

In this original proceeding pursuant to C.A.R. 21, we consider whether evidence concerning a decedent's future income tax liability is admissible for purposes of calculating the net pecuniary loss to a plaintiff in a wrongful death suit brought pursuant to Colorado's Wrongful Death Act ("the WDA"), sections 13–21–201 to –204, C.R.S. (2007). The defendant in the trial court, Pioneer Sand Company, Inc. ("Pioneer Sand"), brought this original proceeding and argues that the future income tax liability of the decedent in this matter, Arbuth Jay Hoyal ("decedent husband"), should be taken into account when calculating the net pecuniary loss to the plaintiff, Dawn E. Hoyal ("Hoyal"). We hold that evidence of a decedent's future income tax liability should not be considered when calculating net pecuniary loss to a plaintiff in a wrongful death action. Accordingly, we discharge the rule to show cause.

I.

This case involves a wrongful death suit instituted by Hoyal, surviving spouse of decedent husband. Defendant Pioneer Sand is in the business of selling landscaping and other

* Justice Rice, Justice Coats, and Justice Eid would grant the Petition.

building supplies. On August 21, 2004, decedent husband visited Pioneer Sand's facility, located in Colorado Springs, in order to purchase firewood. As he began loading firewood into his pickup truck, a concrete block wall behind him collapsed and concrete blocks fell on him, killing him.

Asserting that her husband's death was the result of Pioneer Sand's tortious conduct, Hoyal brought suit pursuant to the WDA requesting damages for economic and noneconomic losses resulting from his death. Both Hoyal and Pioneer Sand retained experts who prepared reports calculating the economic losses Hoyal sustained. Hoyal's expert estimated that her economic losses ranged from $4,566,922 to $10,695,027. Pioneer Sand's expert estimated that Hoyal's economic losses ranged from $1,010,000 to $1,162,000.

Pioneer Sand's expert accounted for the decedent husband's projected future income tax liability. Hoyal's expert did not consider the decedent husband's potential future income tax liability.

Hoyal subsequently filed a motion in limine with the trial court, requesting that Pioneer Sand be barred from presenting any evidence concerning the decedent husband's income tax liability. The trial court granted Hoyal's motion in limine. Pioneer Sand then filed this original proceeding.

Pioneer Sand's argument in favor of using decedent husband's projected future income tax liability in calculating Hoyal's economic losses from his wrongful death is: (1) Hoyal is entitled to compensation only for economic benefits she reasonably would have expected to receive from her husband had he lived and (2) his future income would have been subject to income taxes.

Hoyal counters that Colorado law does not allow the jury to consider the decedent's future tax liability in calculating the economic

damages due to plaintiff in a wrongful death action. We agree with Hoyal and uphold the trial court's order excluding such evidence.

## II.

■ We hold that evidence of a decedent's future income tax liability should not be considered when calculating net pecuniary loss to a plaintiff in a wrongful death action. Accordingly, we discharge the rule to show cause.

### A. Wrongful Death Actions and Damages for Economic Loss

The WDA is governed by sections 13–21–201 to –204. Section 13–21–203 provides in such actions that the jury "may give such damages as they may deem fair and just." § 13–21–203.

A surviving spouse in a wrongful death action may recover both economic and noneconomic losses incurred as a result of the negligently caused death of his or her spouse. *See id.; see also Lanahan v. Chi Psi Fraternity*, 175 P.3d 97, 99 (Colo.2008) (noting that the WDA, originally enacted in 1877, was amended in 1989 to allow recovery for noneconomic damages as well as economic damages). In addition to being entitled to compensation for economic damages such as funeral expenses, a surviving spouse is entitled to compensation for the loss of financial benefits he or she reasonably would have expected to receive from the decedent had the decedent lived. *See* CJI–Civ.4th 10:3 (2008). The measure of the latter category of economic damages is known as net pecuniary loss.

The substance of the net pecuniary loss rule is not defined by statute, but rather has developed through cases interpreting provisions of the WDA. One of the first cases to describe the nature of net pecuniary loss [1] as

---

1. The term "net pecuniary loss" has sometimes been used interchangeably with the term "pecuniary loss" when referring to economic damages sustained by a plaintiff in a wrongful death case. *See, e.g., Morrison v. Bradley*, 655 P.2d 385, 388 (Colo.1982) (noting damages in a wrongful death action are limited to the "net pecuniary loss suffered by the survivor," and stating that the role of the jury was to place a dollar value on "pecuniary loss suffered" by the survivor); *McEntyre v. Jones*, 128 Colo. 461, 463, 263 P.2d 313, 314 (1953) (referring to jury instructions in two wrongful death cases in which damages were alternately described using the term "net pecuniary loss" and "pecuniary loss," and concluding that the jury instructions in both cases described the proper measure of damages); *Moffatt v. Tenney*, 17 Colo. 189, 197, 30 P. 348, 351

a measure of damages for wrongful death cases is *Pierce v. Conners*, 20 Colo. 178, 37 P. 721 (1894). In *Pierce*, we stated that "the true measure of compensatory relief in [a wrongful death action] is a sum equal to the net pecuniary benefit which plaintiff might reasonably have expected to receive from the deceased had his life not been terminated by the wrongful act, neglect or default of the defendant." *Id.* at 182, 37 P. at 722.

Factors relevant to determining net pecuniary loss include: the age, health, and life expectancy of both the decedent and the plaintiff; the decedent's industriousness and ability to earn money; the decedent's willingness to assist the plaintiff; the kinship or legal relationship between the decedent and the plaintiff; and the nature of the relationship between the decedent and plaintiff as evidenced by the decedent's actions. *Id.,* 37 P. at 722.

Accordingly, with respect to the calculation of economic losses, the pertinent civil jury instruction, CJI–Civ.4th 10:3 (2008), recites as follows:

> In determining such damages, you shall consider the following:
>
> \* \* \*
>
> (2. any economic losses, including reasonable funeral, burial, internment, or cremation expenses, and any net financial loss which the Plaintiff [and those the plaintiff represents] have had because of the death of *[name of decedent].* The net financial loss is the same as the financial benefit the plaintiff [and those the plaintiff represents] might reasonably have expected to receive from *[name of decedent]* had [he][she] lived.)
>
> In determining these damages, if any, you should consider the age, health, and life expectancy of *(name of decedent),* the age, health, and life expectancy of the plaintiff (and those the plaintiff represents), the *(name of decedent's)* industriousness, ability to earn money, willingness

to assist the plaintiff (and those the plaintiff represents), and the nature of the relationship between *(name of decedent)* and the plaintiff (and between *[name of decedent]* and those the plaintiff represents).

Absent from these economic loss factors enunciated in the case law and the jury instruction is a consideration of the decedent's future tax liability in calculating the plaintiff's economic losses.

### B. Colorado Case Law Pertaining to Taxation and Economic Damages

#### 1. Taxation Not a Factor in Net Pecuniary Loss Calculations and Jury Instructions

In *Gerbich v. Evans,* 525 F.Supp. 817, 819 n. 4 (D.Colo.1981), a diversity case discussing Colorado's net pecuniary loss rule in wrongful death actions, the United States District Court for Colorado observed that "income tax is not mentioned in the many factors that trial courts are supposed to consider in determining net pecuniary loss." In the absence of a Colorado Supreme Court case to the contrary, the federal court relied on Colorado Court of Appeals decisions precluding taxation evidence and instructions. *Id.* at 819 (*citing Hildyard v. W. Fasteners, Inc.,* 33 Colo.App. 396, 522 P.2d 596, 601 (1974); *Polster v. Griff's of Amer., Inc.,* 32 Colo.App. 264, 514 P.2d 80, 83 (1973), *rev'd on other grounds,* 184 Colo. 418, 520 P.2d 745 (1974); *Davis v. Fortino & Jackson Chevrolet Co.,* 225, 32 Colo.App. 222, 510 P.2d 1376, 1378 (1973)).

The general rule in Colorado personal injury actions is that taxation instructions are not given to the jury. John W. Grund & J. Kent Miller, *Colorado Personal Injury Practice–Torts and Insurance,* § 37.56 (2d ed.2000).[2] In *Rego Co. v. McKown–Katy,* 801 P.2d 536, 539 (Colo.1990), we disapproved a trial court instruction addressing the nontaxability of an award for personal injury

(1892) (describing surviving spouse's damages as "pecuniary loss" suffered as a consequence of decedent's death).

**2.** Section 6:10 of the Colorado Jury Instructions, captioned "Effect of Income Tax and Other Economic Factors on Award of Damages," contains

a "Special Note" stating "No position has been taken by the Committee on the formulation of instructions dealing with 'economic factors' as they may affect an award of damages." CJI–Civ.4th 6:10 (2008).

damages. In so doing, we were concerned about "speculation" and an "inevitable flood of cautionary instructions that would ensue" were we to sanction the use of such instructions. *Id.* We discussed and refused to follow the U.S. Supreme Court's decision in *Norfolk & Western Railway Co. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), construing a federal statute to the contrary. *Rego,* 801 P.2d at 538–39. In *Liepelt,* a wrongful death action under the Federal Employers' Liability Act, the Court held that income tax is a relevant factor in calculating the monetary loss suffered by a decedent's dependents. 444 U.S. at 493–94, 100 S.Ct. 755. We observed in *Rego* that *Liepelt* articulated a federal rule favoring nontaxability instructions and only a minority of states had been persuaded to apply this rule in state law cases. *Rego,* 801 P.2d at 538.

### 2. Rationale for Excluding Taxation Evidence

The Washington Supreme Court's decision in *Hinzman v. Palmanteer,* 81 Wash.2d 327, 501 P.2d 1228, 1232 (1972), exemplifies the rationale employed by those jurisdictions that reject consideration of income tax on probable future earnings. The *Hinzman* court noted income tax liability or savings is: (1) not pertinent to the damage issue, being a matter between the plaintiff and the taxing authority and of no legal concern to the defendant; (2) the amount of income tax that might become due on one's prospective earnings in future years is too conjectural to be considered in fixing damages; and (3) to introduce an income tax matter into a lawsuit for damages would be unduly complicating and confusing. *Id.; see also, e.g., Hicks v. Jones,* 217 W.Va. 107, 617 S.E.2d 457, 464–65 (2005) (holding that, in calculating a plaintiff's damages for accrued loss of earnings or

for impairment of future earning capacity because of personal injuries, the award of damages should be based on the plaintiff's gross earnings).[3]

In *Johnson v. Manhattan & Bronx Surface Transit Operating Authority,* 71 N.Y.2d 198, 524 N.Y.S.2d 415, 519 N.E.2d 326, 329 (1988), the New York Court of Appeals observed in a wrongful death case that a majority of jurisdictions have stayed with a rule precluding evidence of after-tax income on the earnings damage issue to avoid "turning every negligence case into a trial (at least) of the future federal income tax structure involving a parade of tax experts." In fact, our decisions generally consider tax returns to be irrelevant and not discoverable on the question of present and future damages in personal injury actions. *See Alcon v. Spicer,* 113 P.3d 735, 742–43 (Colo.2005); *Corbetta v. Albertson's, Inc.,* 975 P.2d 718, 722–23 (Colo. 1999) (addressing exemplary damages). We have relied on the legislative policy of the Colorado General Assembly for such holdings. *See Alcon,* 113 P.3d at 743; *Corbetta,* 975 P.2d at 722–23.

### C. Application to This Case

■ We agree with jurisdictions that do not include the effect of future income taxes in calculating economic damages in wrongful death and personal injury actions. A principal function of tort law is to compensate a victim for the wrongdoing of the tortfeasor. *See Bayer v. Crested Butte Mountain Resort, Inc.,* 960 P.2d 70, 72 (Colo.1998). Tax statutes, rules, and levies involve the relationship between the government and taxpayers, tied to shifting governmental policy and future economic conditions—matters the General Assembly and our court decisions have not previously factored into tort law damages calculations. A battle of the experts about what Congress or the General Assembly

---

**3.** *See also Canavin v. Pac. Sw. Airlines,* 148 Cal. App.3d 512, 196 Cal.Rptr. 82, 100 (1983) (Staniforth, J., concurring) (stating that the "majority" rule in California and the United States is that income taxes "are of no relevance" in personal injury litigation); *Klawonn v. Mitchell,* 105 Ill.2d 450, 86 Ill.Dec. 478, 475 N.E.2d 857, 859 (1985) (excluding evidence and jury instructions concerning income tax in wrongful death and personal injury cases); *Terveer v. Baschnagel,* 3 Ohio App.3d 312, 445 N.E.2d 264, 269 (1982) ("Under Ohio law, the jury is to consider the gross income of the decedent and not the net income after taxes and deductions."); *Girard Trust Corn Exch. Bank v. Phila. Transp. Co.,* 410 Pa. 530, 190 A.2d 293, 298 (1963)(noting the majority rule is that income taxes should not be considered in fixing damages for a decedent's earning capacity).

might effectuate in the future regarding tax policy and the amount individual tax payers will likely owe in the future would increase the expense of litigation and divert juries from the focus of their fact-finding and decisional responsibilities, as set forth in trial court instructions proper for wrongful death and personal injury actions.

We recognize that the General Assembly may choose in the future to adopt a rule of damages in tort cases contrary to our decision in this case. Here, we decline to institute a new case law rule in Colorado requiring the consideration of potential future tax liability when calculating economic damages. In doing so we recognize that our decision in *Lewis v. Great Western Distributing Co. of Borger*, 168 Colo. 424, 426–27, 451 P.2d 754, 755 (1969), can be read as hinting that the determination of net pecuniary loss in a wrongful death case contemplates deduction of income taxes. However, that case contained no analysis of the issue and simply recited, in passing, a given set of facts concerning after-tax income.

We conclude that the federal district court's later-in-time decision in *Gerbich* correctly stated Colorado law to the contrary, as illustrated by our decision in *Rego. See also Stamp v. Vail Corp.*, 172 P.3d 437, 448 (Colo. 2007) (extending holding concerning exemplary damages requested pursuant to the Ski Safety Act ("SSA") in a personal injury action to exemplary damages requested pursuant to the SSA in a wrongful death action); *Boettcher & Co. v. Munson*, 854 P.2d 199, 207 (Colo.1993); *Landsberg v. Hutsell*, 837 P.2d 205, 210 (Colo.App.1992) (applying *Rego* to a wrongful death case).

Accordingly, we decline to follow decisions that allow the consideration of potential taxes in calculating economic damages. *See, e.g., United States v. Sommers*, 351 F.2d 354, 359–60 (10th Cir.1965) (taking income tax liability into account in Federal Tort Claims Act case applying Nevada law which provided for "fair and just damages" resulting from wrongful death); *DeWeese v. United States*, 419 F.Supp. 170, 172 (D.Colo.1976), *aff'd*, 576 F.2d 802 (10th Cir.1978); *Ruff v. Weintraub*, 105 N.J. 233, 519 A.2d 1384, 1388 (1987) (holding that proper measure of damages for

lost future income in personal injury cases is net income after taxes and trial court commits error by not instructing jury of nontaxability of award sum if such instruction is requested).

In the case before us, we uphold the trial court's order excluding evidence of potential future income taxes in calculating economic damages in this wrongful death action.

### III.

Accordingly, we discharge our rule to show cause and return this matter to the district court for further proceedings consistent with this opinion.

Justice RICE dissents, and Justice COATS and Justice EID join in the dissent.

Justice RICE, dissenting.

The case at hand presents the question of whether a trier of fact, in determining the net pecuniary loss to the plaintiff in wrongful death actions, may receive and consider evidence of the income taxes owed by the decedent. Because this court has not addressed this issue previously, and there are compelling reasons to include the decedent's income tax liability in the determination of net pecuniary loss, I respectfully dissent. I would make the rule absolute and reverse the trial court's order.

### I. This Court Has Not Previously Performed A Substantive Analysis Of The Issue At Hand

This court has assumed without analysis that one must take account of the taxes the decedent owed on his or her earnings, when determining the net pecuniary loss to the plaintiff. *See Lewis v. Great W. Distrib. Co.*, 168 Colo. 424, 427, 451 P.2d 754, 755 (1969) (discussing plaintiffs' net pecuniary loss with regard to decedent's "pay after taxes"). However, *Lewis* represents this court's only statement on the issue, and it did not involve an in-depth analysis. Though we discussed "the nontaxability [jury] instruction" in *Rego Co. v. McKown-Katy*, 801 P.2d 536, 538 (Colo.1990), that case involved a very different issue: whether juries should be instruct-

ed that wrongful death awards are exempt from federal taxation, thereby preventing juries from "inflating damage awards based on wrongful speculation about tax consequences." *Id.* at 539. We noted that only a minority of jurisdictions had adopted the United States Supreme Court's holding, in section II of its opinion in *Norfolk & Western Railway Co. v. Liepelt,* 444 U.S. 490, 496–98, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), that juries should be instructed that the plaintiff's damage award is not subject to federal taxation. *Rego,* 801 P.2d at 538–39. However, we did not mention or analyze the holding in section I of the *Liepelt* decision regarding the relevance of taxes the decedent would owe on his or her future income. *Id.* We also addressed personal income tax liability in *Boettcher & Co. v. Munson,* 854 P.2d 199, 203 (Colo.1993), but in the context of whether a jury should be instructed to adjust the plaintiff's award in Colorado Securities Act actions to account for tax advantages the plaintiff received from the defendant's wrongful conduct. We concluded that such an adjustment was unnecessary, because the plaintiff's damage recovery in a securities action is subject to taxation, *id.* at 207, and in any event the Internal Revenue Service would likely disallow any prior tax benefits. *Id.* at 205–206. Thus, we concluded that instructing juries to account for tax benefits in securities actions would inappropriately subject the plaintiff to double taxation. *Id.* at 207.

The case at hand presents a question very different from those addressed in *Rego* and *Boettcher* which, read most generally, concern income taxes the *plaintiff* will owe upon receipt of a damages award. Here we must address whether the jury may consider the income taxes the *decedent* would have owed in determining the net pecuniary loss to the plaintiff.[1]

## II. Juries Should Be Allowed To Consider The Decedent's Income Tax Liability In Calculating The Plaintiff's Net Pecuniary Loss In Wrongful Death Actions

The net pecuniary loss rule is intended to compensate the plaintiff for the loss of pecuniary benefits the decedent would have provided to him or her, had the decedent survived. *Pierce v. Conners,* 20 Colo. 178, 182, 37 P. 721, 722 (1894). To determine a plaintiff's net pecuniary loss, Colorado courts have considered the decedent's age, health, earning ability, probable life expectancy, and disposition to aid the plaintiff, among other things. *See id.; Newland v. Holland,* 624 P.2d 933, 935 (Colo.App.1981). These factors are used in what can be broken down into the separate calculations of (1) funds likely available to the decedent over his or her lifetime, and (2) the portion of those funds that the decedent likely would have provided to the plaintiff.

In determining the funds likely available to the decedent over his or her lifetime, one cannot consider only his or her earnings. One must also consider the taxes the decedent would pay on those earnings, because funds paid to the government are funds that would not be available to the decedent to give to the plaintiff. *See Liepelt,* 444 U.S. at 493, 100 S.Ct. 755 (holding that under the Federal Employers' Liability Act, "[t]he amount of money that a wage earner is able to contribute to the support of his family is unquestionably affected by the amount of the tax he must pay to the Federal Government.... It follows inexorably that the wage earner's income tax is a relevant factor in calculating the monetary loss suffered by his dependents when he dies."). Indeed, the plaintiff in this case does not dispute that the decedent's income tax liability is logically relevant to the question of her net pecuniary loss. Rather, she argues that such evidence should be ex-

1. Federal courts applying Colorado law have addressed the issue presented here with conflicting results. On the one hand, the Tenth Circuit Court of Appeals affirmed a district court's holding in a diversity case that it was proper for a trier of fact to consider the decedent's income tax liability in determining net pecuniary loss. *Deweese v. United States,* 576 F.2d 802, 807, 808–09 (10th Cir.1978). On the other hand, another district court judge noted that "[i]ncome tax is not mentioned in the many factors that trial courts are supposed to consider in determining net pecuniary loss," declined to speculate on how this court would rule on that issue, and therefore excluded evidence of the decedent's income tax liability in a diversity case. *Gerbich v. Evans,* 525 F.Supp. 817, 819 n. 4 (D.Colo. 1981).

cluded because it is confusing to juries and requires speculation.

The United States Supreme Court was confronted with similar arguments when it addressed whether the decedent's tax liability should be considered in Federal Employers' Liability Act cases when awarding damages for the "deprivation of the pecuniary benefits which the beneficiaries might have reasonably received" from the decedent—a standard that is functionally the same as net pecuniary loss. *See Liepelt*, 444 U.S. at 493, 100 S.Ct. 755. The court found that though future tax liability was indeed impossible to precisely predict, other factors required for the calculation of the survivor's lost pecuniary benefit, such as "future employment itself, future health, future personal expenditures, future interest rates, and future inflation are also matters of estimate and prediction." *Id.* at 494, 100 S.Ct. 755. Though it can be complicated to predict such things, "the practical wisdom of the trial bar and the trial bench has developed effective methods of presenting the essential elements of an expert calculation in a form that is understandable by juries that are increasingly familiar with the complexities of modern life." *Id.*

Several states' courts have come to the same conclusion in interpreting their own wrongful death statutes. *See Floyd v. Fruit Indus.*, 144 Conn. 659, 136 A.2d 918, 925–26 (1957) ("It would be difficult to conceive of a more unjust, unrealistic or unfair rule than one which would lead a jury to base their allowance of reasonable compensation for the destruction of earning capacity on the hypothesis that no income taxes would be paid on net earnings."); *Adams v. Deur*, 173 N.W.2d 100, 105 (Iowa 1969) ("It is to us self-evident future probable taxes are no more speculative than any other element a trier of the facts is permitted, if not required, to consider in the determination of wrongful death damages."); *Tenore v. Nu Car Carriers, Inc.*, 67 N.J. 466, 341 A.2d 613, 628 (1975), *abrogated on other grounds by De-Hanes v. Rothman*, 158 N.J. 90, 727 A.2d 8 (1999).

The Supreme Court's reasoning in *Liepelt* has also been adopted by leading commentators. *See* Restatement (Second) of Torts § 914A cmt. c (1979) (concluding that in wrongful death actions, award to plaintiffs cannot be based on gross earning because the decedent "could not have given them funds that he spent on himself or paid in taxes or used for other purposes; and an appropriate percentage of his expected earnings, taking into consideration these various types of expenditures, is proper"); Dan B. Dobbs, 2 *Law of Remedies* § 8.6(4), at 504 (2d ed. 1993) ("[B]ecause the measure of damages in wrongful death cases gives the survivors only the contributions the deceased would have made but for the death, and because these contributions could not have included any sums that would have been paid as taxes, it has been commonly thought that income tax effects should be considered in death cases even when not considered in injury actions.").

I find this reasoning persuasive, and I would therefore hold that there is no valid reason to prevent triers of fact from considering evidence of the decedent's tax liability in calculating the plaintiff's net pecuniary loss. I cannot see that a calculation of future tax liability is unduly speculative considering the other predictive calculations a trier of fact is asked to evaluate in determining net pecuniary loss. Though the tax laws may change, we have decades of historical data (almost a century in the case of the federal income tax) providing likely parameters for such changes. Such predictions are usually the province of competing experts, who provide competing calculations that the trier of fact can evaluate. Ever since the 1980 *Liepelt* decision, experts have been making these calculations for cases pending in federal court, and there are now secondary sources available to guide experts in those calculations. *See, e.g.*, W. Cris Lewis & Taylor J. Bowles, "Alternative Approaches to Tax Adjustments in Appraising Economic Losses," in *Economic Foundation of Injury and Death Damages* 393 (Roger T. Kaufman et al. eds., 2005); W. Cris Lewis & Taylor J. Bowles, "A Statistical Analysis of Federal Income Tax Rate Stability Over Time and Implications for Valuing Lifetime Earnings," in *Economic Foundation of Injury and*

*Death Damages* 405 (Roger T. Kaufman et al. eds., 2005); Elizabeth M. King & James P. Smith, *Computing Economic Loss in Cases of Wrongful Death* 78–89 (1988); Stuart M. Speiser & John Maher, *Recovery for Wrongful Death and Injury: Economic Handbook* ch. 11 (4th ed.1995). Considering that we are already asking triers of fact to evaluate experts' predictions of an individual's future earnings, it should not be overly difficult or confusing to ask the trier of fact to evaluate experts' application of a predicted tax rate to those future earnings.

In fact, the case at hand illustrates this point. First, the plaintiff's expert provided a report calculating the decedent's future earnings under several scenarios, without accounting for the decedent's income tax liability. The defendant's expert then issued his own report, criticizing the plaintiff's earnings projections on several grounds, and also insisting that they must be adjusted for federal and state income taxes. The defendant's expert presented his own projections of the decedent's income, and also adjusted the opposing expert's projections, all accounting for projected tax liability. The plaintiff's expert then submitted a rebuttal report defending his projections of income and insisting that tax liability was irrelevant, but also providing a critique of the opposing expert's tax calculations and projections. The plaintiff's expert then adjusted the opposing expert's projections using his own income tax projections. In this way, the trier of fact would be provided with competing projections of the decedent's net future income,

and the tax projections would be only one of the many differences that the trier of fact would have to consider in evaluating which damage model was most correct. Excluding the decedent's income tax liability would not make these calculations significantly simpler, but it *would* guarantee a less accurate prediction of the plaintiff's net pecuniary loss.

We have previously noted that the net pecuniary loss rule "serves to negate any possibility of a windfall to the decedent's heirs by denying them compensation for injuries which were not their own." *Espinoza v. O'Dell,* 633 P.2d 455, 464 (Colo.1981). Awarding wrongful death damages without accounting for the decedent's tax liability creates a wholly different policy of providing plaintiffs with windfall awards that exceed their actual damages—in essence, taking money the Internal Revenue Service lost and giving it to the plaintiff. Because I believe any major change in such a well-established policy should come from the legislature, I would make the rule absolute and reverse the trial court's order. For these reasons, I respectfully dissent from the majority's opinion.

I am authorized to state that Justice COATS and Justice EID join in this dissent.